[Civil No. 4241. Filed June 23, 1941.]

[114 Pac. (2d) 891.]

STATE OF ARIZONA, ex Rel. ARTHUR T. La-PRADE, Attorney General, Appellant, v. E. M. CARROW and EDITH MAUDE CARROW, His Wife, Appellees.

Mr. Joe Conway, Attorney General, Mr. A. R. Lynch, Assistant Attorney General, Mr. B. J. Choisser, Associate Counsel, and Mr. Frank X. Gordon, for Appellant.

Mr. Harlow H. Akers, Mr. John W. Murphy, and Mr. Carl G. Krook, for Appellees.

LOCKWOOD, C. J.—This is an action by the State of Arizona, plaintiff, to condemn for highway purposes certain lands belonging to E. M. Carrow and Edith Maude Carrow, his wife, defendants. Judgment was rendered fixing the damages of defendants, and the state has appealed therefrom.

The facts material to a determination of the appeal may be stated as follows: In May, 1933, the state highway commission adopted a resolution directing the acquisition of the lands necessary for certain improvements on state highway number 66, and, as improved and realigned, passing over the lands involved in this proceeding. Suit to condemn the property was filed by the state on October 26, 1933. The matter remained in abeyance, however, for some time and was not tried until 1939. Defendants and their predecessors in interest have for many years operated a large cattle business in northern Arizona. At the time of the suit their cattle ranged over some 120,000 acres of land, approximately 40,000 of which lay north of the Atchison, Topeka & Santa Fe Railroad, and the balance to the south. The latter portion is not involved in any manner in this action. Approximately 6,000

acres lie between the railroad on the south and highway 66 on the north.

The range of defendants was composed of four classes of land, (a) patented land owned by them, (b) land owned by the railroad company but leased to defendants from year to year, (c) state land leased to them for a period of five years, and (d) land belonging to the United States government. At the time of the inception of the suit this government land was used by defendants without any legal right thereto, but at the time of the trial they had acquired a permit for its use from the government, under the Taylor Act, 43 U. S. C. A., § 315 et seq. The land lying between the railroad and the highway included all four of these classes of land. The damages found by the court were divided into three items. The first was for the land actually taken, amounting to somewhat less than forty acres. This was valued at $5 per acre, and there is no dispute between the parties as to the correctness of this part of the judgment. The second item was for erosion and change of drainage of some of the lands adjoining the highway, caused by the cuts and embankments made necessary by its construction. The amount allowed for this was $3,000. The third was for the injury to the use for grazing purposes of the land between the highway and the railroad, caused by the construction by the state of barbed wire fences on the right of way and adjacent thereto which prevented defendants' cattle from watering properly, and, in effect, rendered such land almost useless for grazing purposes. The damages for this item were fixed at $5,000. In the findings and judgment no apportionment of the damages, either on account of erosion and diversion of drainage or the loss of the use of the lands for grazing purposes aforesaid was made as between the lands owned by defendants and

those leased by them, nor between the damage to the reversion and leasehold interest in the latter class.

The situation is governed by the provisions of sections 27–915 and 27–916, Arizona Code 1939, which read, so far as material, as follows:

"27–915. *Value, damages, and benefits to be found.* The court or jury shall ascertain and assess:

"1. The value of the property sought to be condemned and all improvements thereon pertaining to the realty, and of each and every separate estate or interest therein; if it consist of different parcels, the value of each parcel and each estate or interest therein shall be separately assessed;

"2. If the property sought to be condemned constitute only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff; . . . "

"27–916. *Damages and value fixed from date of summons.*—For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of the summons, and its actual value at that date shall be the measure of compensation and damages. . . . "

It is the contention of plaintiff that the court adopted a wrong measure of damages for items two and three, in that no damages could be awarded under subdiv. 2 of sec. 27–915, *supra,* because defendants' deeded land was not contiguous, being alternate odd numbered sections only, and even if such damages could be considered they should have been apportioned, so far as the leased lands were concerned, between the owners of the fee and defendants, who were merely leaseholders thereon, in proportion to the value of their respective interests in the land.

 There are cases which hold that noncontiguous pieces of land are not included in statutes of this nature as being portions of a "larger parcel," damaged

though not taken by condemnation, when the intervening pieces of land are in different ownership. *State* v. *Bradshaw L. & L. Co.*, 99 Mont. 95, 43 Pac. (2d) 674. While we know of no cases precisely in point, we think the more equitable rule is that when the "larger parcel" at the time of the condemnation is held and used by one party for a common purpose, even though his title thereto varies both in quality and quantity, that it is fairly within the terms of the subdivision. But it will be seen that the statute recognizes that if there are separate estates or interests in the property the damages must be separately assessed ·to and apportioned between these interests.

 It is evident, upon an examination of the findings of the trial court, that so far as items two and three above are concerned, it did not proceed to assess the separate interests in the property which was damaged, though not actually taken as a result of the condemnation proceedings, and apportion the damages according to the value of such interests, but rather considered and allowed damages to defendants only on the basis of their business as a going cattle concern.

It is practically unanimously held that injury to a business is not property, within the meaning of the statutes relating to eminent domain, unless there is some express statutory provision allowing it, and that it is only damages to the real estate as such which may be considered. *City of Oakland* v. *Pacific Coast Lumber, etc., Co.*, 171 Cal. 392, 153 Pac. 705; *City of Denver* v. *Bayer*, 7 Colo. 113, 2 Pac. 6; *Virginia, etc., R. Co.* v. *Henry*, 8 Nev. 165; *Stadler* v. *Milwaukee*, 34 Wis. 98; *New York Tel. Co.* v. *State*, 169 App. Div. 310, 154 N. Y. Supp. 1059; *West Chicago Park Com'rs* v. *Boal*, 232 Ill. 248, 83 N. E. 824. Of course, if land is fit for some special purpose which enhances its value, that purpose may be taken into consideration

in determining the value of the land itself, but not the injury to the business as such which is conducted upon the land.

It is necessary, therefore, that the judgment be reversed and the case remanded for a new trial upon the issue of damages for erosion, diversion of drainage, and loss of use as a cattle range, with instructions to apportion the damages for these elements between the owners of the fee and of the leasehold of the land damaged as their respective interests may appear.

There are other questions raised which we have considered but think it unnecessary to discuss as the errors, if any, will doubtless be avoided on another trial.

Judgment reversed.

McALISTER and ROSS, JJ., concur.