375 P.2d 263

Charles M. SUFFIELD and Viola M. Suffield, husband and wife, Appellants,

v.

The STATE of Arizona, ex rel. Robert MORRISON, Attorney General, Appellee.

No. 6845.

Supreme Court of Arizona,

En Banc.

Oct. 10, 1962.

Moore, Vlahovich & Greenwood, Bisbee, for appellants.

Wade Church, former Atty. Gen., Robert W. Pickrell, Atty. Gen., Phoenix, Ralph L. Fenderson, Jr., former Asst. Atty. Gen., Scottsdale, for appellee.

LOCKWOOD, Justice.

This is an appeal by the defendants, Charles M. Suffield and Viola M. Suffield, his wife, from a judgment in a condemnation suit wherein the defendants claim the damages awarded to them for land taken by the State were inadequate.

The facts are as follows: Defendants owned the Union Patented Lode Mining Claim in Cochise County, Arizona, lying athwart Mule Pass, the only natural access way to Bisbee over U. S. Highway

80, between Tombstone and Bisbee, Arizona. The defendants acquired their mining claim in 1939 and have lived there since that date. From time to time they made certain improvements on the land. A well was dug during 1939 and 1940 and water was developed. Later defendants constructed a restaurant building which they operated from 1943 to 1952 when it was closed due to illness and death in defendants' family. In 1948 a concrete and brick residence dwelling was constructed. Both the residence and the restaurant received their main water supply from the well and various pipe lines and storage tanks installed by defendants. This water supply gave the defendants an almost complete independence from outside sources of water for both domestic and commercial uses for a period of approximately fifteen (15) years, from 1940 to the fall of 1955.

On April 29, 1955, the State of Arizona brought action against defendants to condemn a strip of land comprising 3.43 acres (by trial amendment increased to approximately 4.84 acres) across a portion of the said mining claim for the purpose of constructing thereon the Mule Pass Tunnel on U. S. Highway No. 80. That same year a pilot tunnel was driven by the State under Mule Pass, through the parcel of land to be condemned. After this time except for unappreciable quantities (approximately twenty-four gallons of water per day) the defendants' well failed to produce water, and water began flowing from the pilot tunnel, which flow was continuing at the time of the trial. The pilot tunnel had intervened between the water supply that formerly collected in a fault area running from the mountains to the south toward defendants' well to the north. Prior to the drilling of the tunnel the water had percolated through secondary faults moving from the south to defendants' well. By construction of the tunnel the bottom of the water table had been tapped and the water ran out through the tunnel which was on the land taken.

The case was submitted to the jury to determine compensation to which defendants were entitled as measured by 1) the value of the land taken by the appellee, and 2) the damage to the remainder of defendants' property by reason of the severance therefrom of the land taken. The jury fixed the value of the land taken at $480.00 and the severance damage at $1741.00.

The defendants' first assignment of error is that the trial court refused to admit into evidence defendants' exhibit H, consisting of United States and Arizona Partnership Returns of Income for the years 1943 to 1952 inclusive for the restaurant operated by the defendants and known as "The Top Cafe." This was offered to establish "the adaptability of the property to a business use," and the market value of the land. The exhibit was inadmissible as a means of establishing

market value of the property.[1] Even if offered solely to show adaptability of the property to business use, it was not error to refuse to admit it, since there was other competent evidence to show adaptability to such use.

Defendants assign as error the giving of State's instructions Nos. 5 and 8, and failure to give defendants' proposed instructions Nos. 13 and 15, all going to the measure of damages. The basis of their claim with regards to Nos. 5[2] and 8[3] is that A.R.S. § 12–1122 provides for three separate elements of damage: (1) the value of the property condemned, (2) damages accruing to the remainder of the property not condemned by reason of the taking of the property condemned, and (3) damages due to the construction of the improvement (in this instance the highway) in the manner proposed by the state. The pertinent portions of this statute read:

"A. The * * * jury shall ascertain and assess:

"1. The value of the property sought to be condemned * * *.

"2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned, and the construction of the

1. People ex rel. Department of Public Works v. Dunn, 46 Cal.2d 639, 297 P.2d 964 (1956); 4 Nichols, Eminent Domain, § 12–3121 (3d ed. 1962).

2. "In determining the just compensation to which the defendants are entitled, you must first determine the amount of compensation to which they are entitled for the land, together with any improvements thereof, actually taken by the State of Arizona.

"After you have determined the value of the land taken, you must then ascertain the damages the defendants have sustained by reason of the severance of their land taken from the remaining portion of their parcel of land or by reason of the construction of the highway in the manner proposed by the plaintiff.

"The amount of damages will be determined by ascertaining the market value of that portion of the property not taken as it was on April 27, 1955, the date of the summons, and by deducting therefrom the market value of said property after the severance of the property taken by

the state and taking into consideration the construction proposed by the plaintiff. The difference between these values, if there shall be any, will be the amount of damages to which the defendants are entitled."

3. "You are instructed that damage to the land not taken will not be presumed, and unless the owner has shown that the value of the remaining land has been diminished by the taking, the compensation will be limited to the value of the land actually taken. If you should find from the evidence that there has been damage to the property remaining because of the taking of that which is taken, then such damage must be to the property itself, and not a mere infringement of personal pleasure or enjoyment. Merely rendering private property less desirable for certain purposes, or even causing personal annoyance or discomfort in its use, will not constitute the damage for which defendants are entitled to compensation."

improvement in the manner proposed by the plaintiff.

\* \* \* \* \* \*

"B. As far as practicable, compensation shall be assessed for each source of damage separately."

We find no merit in this contention. The statute plainly contemplates only two elements of damage: (1) The value of the property actually taken by condemnation, and (2) the lessening in value of the property remaining, as it may be affected by severing it from the property actually taken, and by the manner in which the proposed improvement may be constructed. This becomes more obvious in the light of the following paragraph 3 of Sub-section A, supra, which provides that if the jury thinks the improvement for which the land was condemned actually benefits the land severed to such an extent that it equals any lessening in value because a part of the whole was taken, then the owner is allowed only the first element, viz., the value of the portion of his property which is actually taken. The instructions complained of properly stated the law.

4. "Ladies and gentlemen of the jury you are instructed that where only a portion of the entire land is taken, if the removal of the mineral deposits in the remainder is impeded, the difficulties encountered in such removal may properly be shown as a factor in assessing the damages."

5. "Ladies and gentlemen of the jury you are instructed that the diversion of water in a well or spring or percolating through

■ Defendants' requested instruction 13 [4] was properly refused. It is a mere assertion that difficulties in removing mineral deposits from remaining land, after and because of the taking of the condemned portion, "may properly be shown as a factor in assessing the damages." This is an assertion of defendants' right to produce such evidence, but not a guide to the jury in assessing any lessening of market value of the property.

■ The court likewise properly refused to give defendants' requested instruction 15.[5] The diversion and loss of the water supply from the well, which was on the land remaining after the taking, might well affect the fair market value of the property thereafter, but the value of the water diverted in and of itself is not the measure of compensation. We think the same reasoning set out in State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P.2d 988 (1960) with regard to destruction or impairment of access [6] is applicable to both of defendants' objections toward the failure of the trial court to give instructions Nos. 13 and 15.

the soil, is a taking for which compensation must be made."

6. "The damages awarded the abutting landowner for destruction or impairment of access therefore is based, not upon the value of the right of access to the highway, but rather upon the difference in the value of the remaining property before and after the access thereto has been destroyed or impaired."

Defendants' contention that the form of verdict was incorrect is predicated upon their claim that § 12–1122, supra, in addition to a finding of (1) the value of the land actually condemned and (2) damages to the remainder, by reason of its severance from the condemned portion, requires a finding of (3) damages occasioned by the construction of the improvement in the manner proposed by the condemner. For the reasons stated earlier in this opinion, the form of verdict as used by the lower court [7] was adequate and correct.[8]

The final assignment of error alleged that the damages were inadequate due to passion and prejudice of the jury caused by the cumulative effect of the alleged errors. Since we have concluded the trial court did not err, we find no element of passion or prejudice. And further, as there was reasonable evidence in the record to support the verdict, it will not be disturbed.[9]

Judgment affirmed.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and JENNINGS, JJ., concur.

7. "We, the jury, duly empaneled and sworn in the above entitled action, upon their oaths do find for the defendants and fix the value of the 4.84 acres at the amount of $480.00.
   "We the jury, duly empaneled and sworn in the above entitled action, upon our oaths do find that the remainder of the property of the defendants has been damaged by the severance of the property taken and by the nature of construction of the improvements as proposed by the plaintiff, and fix the amount of damages in the sum of $1,741.00."
8. See also Morrison v. Jay Six Cattle Co., 88 Ariz. 97, 353 P.2d 185 (1960).
9. See Parker v. State ex rel. Church, 89 Ariz. 124, 359 P.2d 63 (1961).