78

530 P.2d 1111
**ARIZONA STATE LAND DEPARTMENT,
Appellant,**

v.

**The STATE of Arizona ex rel. Justin HER-
MAN, Director, Arizona State Land
Department, Appellee.**

**No. 1 CA–CIV 2384.**

Court of Appeals of Arizona,
Division 1,
Department A.

Jan. 30, 1975.

Rehearing Denied April 18, 1975.

Review Granted May 13, 1975.

N. Warner Lee, Atty. Gen., by Peter C. Gulatto, Asst. Atty. Gen., Phoenix, for appellant.

N. Warner Lee, Atty. Gen., by Stanley Z. Goodfarb, Asst. Atty. Gen., Phoenix, for appellee.

OPINION

OGG, Presiding Judge.

In this case we must determine the proper method of appraisal to be used when state school trust land, under lease as part of an operating cattle ranch, is taken by eminent domain proceedings. The question narrows to a determination of the proper "larger parcel" for appraisal purposes.

The Appellee Arizona Highway Department (Highway Department) condemned

109.43 acres along a sixteen mile front for the construction of Interstate 40 through the Babbitt Ranch near Flagstaff, Arizona. The land taken was from "checkerboard" ranch grazing land comprised of alternate sections of deeded land and Arizona school trust land held by the Appellant Arizona State Land Department (Land Department). The Land Department holds all or portions of fifty separate sections of land which it leases to the Babbitt Ranch operation. Most of these sections are joined with other Land Department sections at a common corner. The total acreage of the ranch is approximately 101,000 acres of deeded, leased and forest allotment lands. The highway right of way passes through eight parcels of state leased land ranging in size from 800 or more acres to a parcel of 40 acres. It also passes through seven sections of deeded land.

At the trial, all original issues in the condemnation case had been settled except for the determination of the monetary sum to be paid by the Highway Department to the Land Department for the state school trust land which was taken for highway purposes. During the trial to the court the Highway Department's appraiser used the entire Babbitt Ranch as the "larger parcel" in determining the fair market value of the take. The appraiser found that comparable sales for such acreage was $25.00 per acre and that the Land Department was entitled to a judgment in the sum of $2,335.75 from the Highway Department.

The Land Department argued that the Babbitt Ranch should not be used as the "larger parcel" and that the "larger parcel" for state school trust land could be no more than 640 acres in size. The Land Department's appraiser found the comparable sales for such acreage was $80 per acre. and that the Land Department was entitled to recover the sum of $8,810.40 for the land taken.

The trial judge rejected the Land Department's appraisal theory and awarded damages for the land taken pursuant to the Highway Department's appraisal. The trial court found there was no severance damage to the remaining land.

◼ The Land Department has appealed, claiming that the court erred in adopting the Highway Department's "larger parcel" appraisal method. The judge had to determine which of the two appraisal methods was acceptable. In our opinion the trial court was correct in accepting the appraisal of the Highway Department.

The basic differences in the two appraisals can best be highlighted by reviewing pertinent portions of the testimony. In regard to the issue in this case, the Highway Department appraiser stated:

"A. The entire Babbitt Ranch holding in my opinion constituted the larger parcel because it would, that is what would be offered and sold on the market typically.

Q. And so your appraisal is based on that concept of the ranch holdings?

A. Yes, sir, the entire operating ranch.

Q. That includes the Forest lands as well as the State lands and the fee land?

A. Yes, sir.

Q. Well, in that larger parcel concept you are familiar with the usual appraisal phraseology of unity of use and ownership? Did you consider that those concepts properly related to this situation?

A. Yes, sir, the property I think meets the test of unity of use, contiguity and more or less unity of title certainly under lease or fee simple ownership.

Q. And you did then consider that there was contiguity both with respect to the State lease lands and the fee lands, is that correct?

A. Yes, sir, I did.

Q. Well, now, what did you determine to be the highest and best use for this particular land, Mr. Francy?

A. Its continued use as an operating cattle ranch."

His approach to value was based on the market date approach. He used as comparable sales the sale of five large ranches in northern Arizona whose per acre unit price ranged from $20 to $27 per acre. Based on these sales, he arrived at the following opinion:

"A. Yes, based on these transactions it was my opinion that the subject land had a unit value of $25.00 per acre.

Q. And would that be true throughout, with respect to both the fee lands and the State land?

A. Yes, in my opinion it would be because they are physically identical, in other words, there is no major physical differences between the State and the fee owned lands.

Q. So that you found no reason from your study of the subject property and correlation of these sales to make any distinction in value between one section as against the other sections?

A. No, I did not."

The Land Department's appraiser testified that the highest and best use of the land taken was for land investment purposes. Upon instructions from his attorney the appraiser used a "larger parcel" not to exceed 640 acres; all comparable sales involved similarly sized parcels. The following portions of his testimony reflect the procedure he followed in his appraisal and some of the practical appraisal problems encountered in limiting his "larger parcel" to an area not to exceed 640 acres:

"Q. After you considered the market and inspected the property and took into consideration your instructions concerning the larger parcel, did you arrive at a conclusion of value?

A. Yes, sir.

Q. Of the property being taken?

A. Explanation here. Based on my instructions as to the larger parcel I had to write separate appraisals, because there were eight separate sections which this freeway is going through. I arrived at an overall value conclusion for each of those eight sections.

Q. And were each of the sections limited to a 640 acre unit?

A. No, in two instances the sections were larger than 640 acres so I had to, again based on the instructions, arbitrarily determine the 640 acres to be chosen, which was just taking off the south part in both instances.

Q. Based on your considerations—

THE COURT: What do you mean by arbitrarily determined?

THE WITNESS: Well, Your Honor, the first section if you will notice in blue up on that map is an eight hundred and some acre section, so I took off as my area of the whole I took off the south half of the south half of that section to get the 640 limitation."

\*　\*　\*　\*　\*　\*

"Q. Mr. Fish, based on your conclusion of value of $80 an acre, would you state what your conclusion of the total value of the take involved in this case?

A. I did not total it. I was dealing with this per instructions as eight separate parcels, and there was, it seemed incongruous to me to come up with a total of those eight separate parcels."

It appears that the appraisal approach of the Highway Department was sound in using the entire ranch as the "larger parcel" since it was a single, functional unit and would normally sell as such. The state lease land had been a part of the ranch for over 40 years. The Land Department appraiser encountered problems when the sections were not uniform in acreage and it appeared that he had to deviate from normal appraisal concepts to comply with his instructions to limit the "larger parcel" to an area not to exceed 640 acres.

Although the Highway Department's appraisal method appears to be the most realistic approach, we must also determine if that appraisal method is permissible under Arizona law. The Land Department contends that the United States Supreme Court decision of Lassen v. Arizona, 385 U.S. 458, 87 S.Ct. 584, 17 L.Ed.2d 515 (1967) has established guidelines that must be followed when school trust lands are condemned by the Highway Department. In that case, the court stated:

> "The Enabling Act unequivocally demands both that the trust receive the full value of any lands transferred from it and that any funds received be employed only for the purposes for which the land was given. First, it requires that before trust lands or their products are offered for sale they must be 'appraised at their true value,' and that 'no sale or other disposal . . . shall be made for a consideration less than the value so ascertained . . . .'" 385 U.S. at 467, 87 S.Ct. at 588–589.

The Supreme Court concluded the opinion by stating:

> "We hold therefore that Arizona must actually compensate the trust in money for the full appraised value of any material sites or rights of way which it obtains on or over trust lands. This standard most clearly reproduces the results of the auction prescribed by the Act, and most consistently reflects the essential purposes of the grant." 385 U.S. at 469–470, 87 S.Ct. at 590.

See also Arizona Enabling Act, Section 28, Volume 1, ARS.

■ The Land Department reasons that, under the provisions of § 37–240A, A.R.S., and Lassen, the "larger parcel" for appraisal purposes can be no larger than 640 acres since that would be the largest tract of state school trust land that could be sold at any one sale. We cannot accept this conclusion; § 37–240A, A.R.S., states "[n]o person may purchase more than six hundred forty acres of grazing land . . ." This provision is not applicable to the State Highway Department since the definition of "person" as set forth in § 1–215, A.R.S., does not include the state or a state agency. Even more important is the fact that § 37–240A sets a limitation only on the amount of grazing land a person may purchase at any specific sale and has nothing to do with changing basic methods of appraisal. The Lassen case requires that an appraisal be made and that the school trust fund receive fair market value for any land taken. An appraisal was made in this case, and the school trust fund did receive the fair market value as determined by standard appraisal procedure.

In State v. Carrow, 57 Ariz. 429, 114 P.2d 891 (1941), our Supreme Court was faced with a "larger parcel" appraisal problem in the condemnation of ranch property which also consisted of deeded, state lease and Federal allotment lands. In ruling that the entire ranch unit met the test of "unity of ownership" as required of a "larger parcel" the Court stated:

> There are cases which hold that non-contiguous pieces of land are not included in statutes of this nature as being portions of a 'larger parcel', damaged though not taken by condemnation, when the intervening pieces of land are in different ownership. State v. Bradshaw L. & L. Co., 99 Mont. 95, 43 P.2d 674. While we know of no cases precisely in point, we think the more equitable rule is that when the 'larger parcel' at the time of the condemnation is held and used by one party for a common purpose, even though his title thereto varies both in quality and quantity, that it is fairly within the terms of the subdivision." 57 Ariz. at 432–433, 114 P.2d at 893.

The Lassen decision overruled specific portions of prior Arizona decisions when the United States Supreme Court held that the Arizona Highway Department must pay the Arizona Land Department the fair market value for any school trust lands that were condemned for highway purposes. State v. Lassen, 99 Ariz. 161, 407

P.2d 747 (1965); State ex rel. Conway v. State Land Department, 62 Ariz. 248, 156 P.2d 901 (1945). The Lassen decision did not discuss or rule upon the "larger parcel" assessment problem presented in this case. This problem was specifically considered in the Carrow decision. See also Deer Valley Industrial Park Development and Lease Co. v. State, 5 Ariz.App. 150, 424 P.2d 192 (1967).

In our opinion the appraisal approach adopted by the trial court was in compliance with the guidelines as established by Lassen and the Arizona statutory and case law.

Affirmed.

DONOFRIO and STEVENS, JJ., concur.