547 P.2d 479

**ARIZONA STATE LAND DEPART-MENT, Appellant,**

v.

**The STATE of Arizona ex rel. Justin HER-MAN, Director, Arizona State Highway Department, Appellee.**

**No. 12086–PR.**

Supreme Court of Arizona,
In Banc.
March 26, 1976.

N. Warner Lee, Former Atty. Gen., Bruce E. Babbitt, Atty. Gen. by Peter C. Gulatto, Asst. Atty. Gen., Phoenix, for appellant.*

N. Warner Lee, Former Atty. Gen., Bruce E. Babbitt, Atty. Gen. by Stanley Z.

---

* Since September 5, 1974 the practice of the staff of the Attorney General representing both sides of a controversy has ceased. On that date this Court denied jurisdiction of a petition filed by the Department of Economic Security for special action against the Department of Administration, both departments being represented by the Attorney General. Another party was substituted for the Department of Economic Security, and the action proceeded as *Navajo Tribe v. Arizona Department of Administration*, 111 Ariz. 279, 528 P.2d 623 (1975). The case at issue had been instituted prior to the above date. The fact that we allowed the matter to continue in its present posture does not reflect any change in our policy for actions instituted after September 5, 1974.

Goodfarb, Asst. Atty. Gen., Phoenix, for appellee.

HOLOHAN, Justice.

The Arizona State Highway Department brought an action to condemn for highway purposes certain lands administered by the Arizona State Land Department. Judgment was entered fixing just compensation for the land taken, and the Land Department appealed. Division One of the Court of Appeals affirmed, *State Land Department v. State ex rel. Herman,* 23 Ariz.App. 78, 530 P.2d 1111 (1975). We granted the petition of the State Land Department for review. The opinion of the Court of Appeals is vacated, and the judgment of the superior court is reversed.

The Highway Department for a number of years has been involved in the improvement and realignment of Interstate Highway # 40 between the cities of Flagstaff and Holbrook. The Highway Department through purchase or condemnation has undertaken the acquisition of lands deemed necessary for the construction of the interstate roadway. The condemnation action at issue involved the acquisition of a strip of land approximately 16 miles long and consisting of privately owned land and state trust land. The parties stipulated that the total volume of land to be acquired from the State Land Department was 109.43 acres.

At the time of the condemnation action, and for some 40 years prior, the land held by the State Land Department had been leased to Babbitt Ranches, Inc. The ranch included over 101,000 acres, consisting of deeded, state leased, and forest allotment land. The highway right-of-way crossed 16 sections of land which consisted of state leased and deeded land and which form on a map a checkerboard pattern of alternating deeded and leased land.

A settlement between Babbitt Ranches, Inc. and the Highway Department resulted in a stipulated judgment determining the amount of damages to be recovered by the ranch owner. The issue between the Highway Department and the State Land Department was tried to the superior court without a jury.

The trial court fixed the value of the state land at $25 per acre which resulted in a judgment for $2,750.00. No severance damages were awarded. The State Land Department contended that the value of the land should be $80 per acre which would total $8,810.40.

The issue involved in this action is the method of valuing state trust lands. The position of the State Land Department is that the value of the land must be based on units no larger than 640 acres. On the other hand, the State Highway Department convinced the trial court that the state land must be valued in relation to the parcel of which it is an operational part, the Babbitt Ranch consisting of 101,000 acres.

The legal position of the State Highway Department is incorrect because it confuses valuation of the land taken with severance damages. This proposition becomes abundantly clear as the authorities cited by the Highway Department are analyzed. The references cited by appellee, 29A C.J.S. *Eminent Domain* § 140 and 4A J. Sackman, Nichols on Eminent Domain §§ 14.31–14.31[2] (Rev. 3d ed. 1974), deal with the subject of consequential or severance damage. The case most heavily relied upon by appellee, *State ex rel. La-Prade v. Carrow,* 57 Ariz. 429, 114 P.2d 891 (1941), involved a claim for severance damage. The appraisal method of the Highway Department was based on a false premise which ignored the plain and clear directions of the statutes governing condemnation.

A.R.S. § 12–1122, the statute governing the method of determining valuation in this case, provides in part:

"A. The court or jury shall ascertain and assess:

"1. The value of the property sought to be condemned and all improvements thereon pertaining to the realty, and of

each and every separate estate or interest therein, and if it consists of different parcels, the value of each parcel and each estate or interest therein separately.

"2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which shall accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff.

.   .   ."

■ The statute provides two elements of damage: (1) the value of the property actually taken by condemnation, and (2) the lessening in value of the property remaining, as it may be affected by severing it from the property actually taken, and by the manner in which the proposed improvements may be constructed. *Suffield v. State ex rel. Morrison,* 92 Ariz. 152, 375 P.2d 263 (1962). The State Highway Department proceeded to have the land appraised and the evidence presented on the theory that the property, the trust land, constituted only a part of a larger parcel. This position ignored the requirement of paragraph 1 of A.R.S. § 12–1122(A) that the first requirement was for the trial court to ascertain the value of the property sought to be condemned, and, if it consisted of different parcels, the trial court should ascertain the value of each parcel separately. The case was tried to the trial court as if it were one involving paragraph 2 of A.R.S. § 12–1122(A) which deals with the method of determining severance damages.

■ The first obligation of the trial court was to determine the value of the property actually taken by the condemnation. In assessing the value of the land taken consideration must be given to all factors which shed light on its value. If the property taken is capable of being considered a separate and economic unit, the market value of property actually taken must be considered without resort to the value of any tract from which it was severed. *Defnet Land & Investment Co. v. State ex rel. Herman,* 103 Ariz. 388, 442 P.2d 835 (1968); *State ex rel. Morrison v. Jay Six Cattle Company,* 88 Ariz. 97, 353 P.2d 185 (1960). If the property taken is not capable of an economic use because of its unusual or irregular size, resort must be made to the tract from which it was taken to arrive at a value for the property taken. *People ex rel. Department of Public Works v. Corporation of the President of the Church of Jesus Christ of the Latter-Day Saints,* 13 Cal.App.3d 371, 379, 91 Cal.Rptr. 532, 537 (1971).

■ The determination of what constitutes an entire tract in circumstances where a part taken from that tract has no independent, economic value should not be confused with the severance damage concept of "larger parcel." The sole purpose of the former inquiry is to discover the market value of the parcel taken from a larger area under the same ownership. A. Jahr, Law of Eminent Domain § 103, at 139 (1953). In contrast, the concern of the larger parcel principle is with consequential damages to the residue of the condemned property. *State ex rel. LaPrade v. Carrow, supra.* Emphasizing the unitary value of the property, the larger parcel is determined by examining the unities of use, ownership and contiguity. 4A J. Sackman, Nichols on Eminent Domain § 14.31 (Rev. 3d ed. 1974). Severance damage may be awarded where title to the property varies both in quality and quantity, provided the property is held and used by one party for a common purpose. *State ex rel. LaPrade v. Carrow, supra,* 57 Ariz. at 432–33, 114 P.2d at 893.

■ The subject matter of the condemnation proceedings in the case at bench is a right-of-way, and, consequently, has no real economic or market value standing alone. The market value must therefore be determined on the basis of a larger tract of which the condemned lands are a part. The requirement that the part taken

be considered as a part of a larger whole in the computation of a market value demands, first, that a value be placed on the entire tract, and, second, that a ratio be formulated to determine the value which the part taken bears to the value of the entire tract. A. Jahr, Law of Eminent Domain § 103, at 139 (1953). The formulation of the ratio requires that the part taken be compared to the remaining tract in order to identify whether the two units of land contain any distinctly different qualities, *e. g.*, natural characteristics, which may result in the part taken having a greater or smaller per acre value than the part not taken. *City of Richardson v. Smith*, 494 S.W.2d 933 (Tex.Civ.App. 1973); *Los Angeles County Flood Control District v. McNulty*, 59 Cal.2d 333, 29 Cal. Rptr. 13, 379 P.2d 493 (1963). This comparison is to be made without reference to physical improvements on the tracts since improvements are compensated for separately under A.R.S. § 12–1122(A)(1). The value of the part taken may then be determined by applying this ratio to the value of the entire tract. A. Jahr, Law of Eminent Domain § 103, at 139 (1953).

■ Central to the present controversy is the size of the entire tract to be used as the point of reference by which the value of the part taken is to be determined. As noted above, the whole tract is to be limited to land under the same ownership of the condemnee. This case, however, involves various considerations which alter the normal application of that rule. The school trust lands through which the right-of-way passes form a checkerboard pattern. The predominant size per checkerboard square, with only minor variation, is 640 square acres, and generally, the squares are contiguous with each other only at their corners. Both the manner in which the federal land was allotted to our state, *i. e.*, by individual sections, and the manner in which our constitution and statutes deal with the sale and administration of such lands manifest an intention that the properties be treated in units of 640 acres or less. A.R.S.Const. Art. 10, § 11; A.R.S. § 37–240; *see Lassen v. Arizona ex rel. Arizona Highway Department*, 385 U. S. 458, 469–70, 87 S.Ct. 584, 590, 17 L.Ed. 2d 515 (1967). We therefore conclude that the maximum acreage size which may be used to determine the value of land in a partial taking of school trust lands is limited to 640 acres.

The trial court was in error for refusing to admit the evidence offered by the State Land Department based on the 640 acres limitation. The judgment of the superior court is reversed, and the case is remanded for a new trial in accordance with the standards outlined in this opinion.

Reversed and remanded.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concur.