868 P.2d 958

**CITY OF PHOENIX, a municipal corporation, Plaintiff–Appellee,**

v.

**LEROY'S LIQUORS, INC., Defendant–Appellant.**

**1 CA–CV 91–0384.**

Court of Appeals of Arizona, Division 1, Department B.

June 22, 1993.

Review Denied March 16, 1994.

Roderick G. McDougall, City Atty. by Kent T. Reinhold, Asst. Chief Counsel, Phoenix, for plaintiff-appellee.

Dushoff & McCall by Andrew L. de Mars, Denise J. Henslee, Phoenix, for defendant-appellant.

## OPINION

WEISBERG, Judge.

Defendant-appellant Leroy's Liquors Inc. ("LLI") appeals from the dismissal of its claim for business damages in an eminent domain action brought by the City of Phoenix. LLI's claim was dismissed after the city had filed a motion in limine to preclude admission of evidence of business losses. The trial court treated the motion as one for dismissal and gave LLI time to respond.

## FACTS AND PROCEDURAL HISTORY

Since 1961, LLI has been a business consisting of the sale of alcoholic beverages, food and sundry goods, as well as the provision of check cashing services. Because of its location, approximately 75% of its customers were residents of the neighborhood known as the "Golden Gate Barrio," which extended from 16th Street to 24th Street and from the Maricopa Freeway to the Southern Pacific Railroad tracks. Most of the remaining 25% of LLI's customers were employees of busi-

nesses located at or near Sky Harbor International Airport.

Beginning in the mid–1970s, Phoenix began a program to condemn residences within the Golden Gate Barrio. By 1987, virtually all of the residences within the Golden Gate Barrio had been acquired and destroyed. From 1982 until LLI was condemned in 1987, the revenues of LLI's alcoholic beverage sales business declined along with its general revenues.

In March, 1987, Phoenix was granted immediate possession of the subject property, requiring LLI to vacate the premises. After availing itself of the Phoenix Relocation Assistance Program, LLI relocated to a new site in April 1988. In order to sell alcoholic beverages at the replacement site, LLI was required to obtain a special use permit from Phoenix. Ultimately, LLI was denied the special use permit. Consequently, LLI was unable to continue selling alcoholic beverages at its replacement site, limiting its business to food and sundry goods sales and check cashing services. Although the parties were able to reach a settlement regarding the damages for the taking of the real property and improvements, they were not able to reach agreement concerning LLI's contention that it was entitled to compensation for business damages. Trial on the business damage claim was set for January 29, 1991. Six days prior to that date, Phoenix filed a motion, designated as a motion in limine, in which it sought to exclude all evidence of the taking of LLI's business, its loss of business profits, and good will. LLI opposed the motion both on the merits and because of its untimely filing. The trial court, however, indicated it would treat Phoenix's motion in limine as a motion to dismiss. After oral argument, the trial court granted the motion to dismiss stating its opinion that "it is the law of this state as articulated by both the Arizona Court of Appeals and the Supreme Court of Arizona that when an owner's business premise is condemned and cannot be relocated that compensation for loss of business, profits, etc. are [sic] NOT compensable in ... eminent domain proceedings." Formal judgment was signed on April 12, 1991.

On May 8, 1991, LLI filed a motion for reconsideration requesting that Phoenix be required to pay the costs LLI had incurred in preparing for trial since this expense would have been avoided if the motion in limine had been timely filed. On May 9, 1991, LLI filed its notice of appeal stating that it was appealing from "the Partial Final Judgment Re: Business Damages entered on April 10, 1991, in favor of Plaintiff." Ultimately, the trial court dismissed the claim, finding that such losses are not compensable under Arizona law. For the following reasons, we affirm that dismissal.

## ISSUES

LLI requests review of the following issues:

(1) Whether the trial court erred in ruling that Arizona case law precludes the recovery of business damages in an eminent domain action when, as a result of the taking of the entire business site and the condemnor's actions, the condemnee's business cannot be relocated.

(2) Whether, under the special circumstances presented by this case, LLI should be compensated by the city for the going-concern value of its liquor business, consistent with decisions from other jurisdictions finding such to be recoverable where the condemnor's actions have effectively destroyed the condemnee's business.

(3) Whether LLI should be compensated for the profits lost prior to the taking of its property, when such lost profits resulted directly from the city's condemnation of the entire neighborhood surrounding LLI's business premises.

(4) Whether the trial court abused its discretion in considering the city's untimely "Motion in Limine" and whether, even if LLI is not permitted to recover any business damages in this case, the city should reimburse LLI for the costs incurred by it in preparing for trial, given the city's unjustifiable delay in filing its motion to preclude recovery of such damages.

## DISCUSSION

■ In reviewing the granting of a motion to dismiss for failure to state a claim upon which relief can be granted, the appellate court must assume the truth of the complaining party's factual allegations and affirm the dismissal only when the complaining party could not prevail on any facts susceptible of proof under the claims stated. *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 186, 677 P.2d 1292, 1294 (1984).

LLI acknowledges that business damages are not ordinarily a component of the compensation due in eminent domain actions. Nevertheless, LLI wants this court to find that LLI is entitled to certain business damages for two reasons. First, it argues that the entire neighborhood surrounding LLI's business premises was condemned, thereby allegedly causing its profits to decline. Second, according to LLI, the condemnation of LLI's property allegedly destroyed the liquor sales portion of LLI's business by foreclosing the possibility of its relocation to a new site where it would be able to retain its going-concern value for that portion of its business.

■ The dispositive issue in this case is whether the Arizona Supreme Court has established a rule of no recovery of business losses in eminent domain proceedings applicable to this fact situation. If so, it must be left to that court to determine whether the rule should be modified in this particular fact situation or in any other. Absent such modification, the trial court was correct in concluding that it was required to follow the settled law of this state and deny recovery for the claimed business losses. Also, this court would be required to affirm because we are bound by decisions of the Arizona Supreme Court and have no authority to overrule, modify, or disregard them. *Bade v. Arizona Dep't of Transp.*, 150 Ariz. 203, 205, 722 P.2d 371, 373 (App.1986); *State v. Brahy*, 22 Ariz.App. 524, 525, 529 P.2d 236, 237 (1974). Whether prior decisions of the Arizona Supreme Court are to be disaffirmed is a question for that court. *McKay v. Industrial Comm'n*, 103 Ariz. 191, 193, 438 P.2d 757, 759 (1968); *State v. Eichorn*, 143 Ariz. 609, 613, 694 P.2d 1223, 1227 (App.1984).

■ We find that the Arizona rule precludes recovery for all business losses resulting from eminent domain proceedings unless they are specially allowed by statute. In *State ex rel. LaPrade v. Carrow*, 57 Ariz. 429, 114 P.2d 891 (1941), the Arizona Supreme Court stated:

It is practically unanimously held that injury to a business is not property, within the meaning of the statutes relating to eminent domain, unless there is some express statutory provision allowing it, and that it is only damages to the real estate as such which may be considered. Of course, if land is fit for some special purpose which enhances its value, that purpose may be taken into consideration in determining the value of the land itself, but not the injury to the business as such which is conducted upon the land.

*Id.* at 433–34, 114 P.2d at 893 (citations omitted). The supreme court has never backed away from this rule in any of the cases it has considered, and similar statements have been made on repeated occasions by both the supreme court and this court. For example, in *State ex rel. Herman v. Schaffer*, 105 Ariz. 478, 485–486, 467 P.2d 66, 73–74 (1970), the supreme court stated that evidence of loss of business may be used to show "a diminution in the highest and best use of the property," but the damages should not reflect "noncompensable factors" such as loss of customers, business, goodwill, income, or profits. Citing to *Schaffer*, this court stated in *Choisser v. State ex rel. Herman*, 12 Ariz.App. 259, 469 P.2d 493 (1970) that the rule is well established that "loss of customers, business, or profits are non-compensable as independent items of damages" and that "[e]vidence of such losses are [sic] admissible only for the very limited purpose of tending to show a diminution in the highest and best use of the property." *Id.* at 261, 469 P.2d at 495.

None of the Arizona cases that discuss the rule of no recovery of business losses had facts similar to the ones alleged in this case wherein a whole neighborhood was condemned and wherein an owner whose property was condemned may have lost the going-concern value of part of its business. The

supreme court, however, was not limiting the rule to the particular facts of each instance. It was stating a blanket rule to be applied in all cases. We believe that this is what the trial court concluded in its ruling notwithstanding the fact that the language used by it could be interpreted more expansively.

In his treatise, Professor Sackman noted that until fairly recent years, the recovery of business losses in eminent domain proceedings under any fact situation was practically never allowed in this country. *See* 4 Julius L. Sackman, *Nichols' The Law of Eminent Domain* § 13.3, at 13–180 (Patrick J. Rohan Comp., 3d rev. ed. 1993). The treatise points out, though, that there has been a trend in modern times in the direction of finding compensability for business losses caused by the condemnation process. It notes that, although the original reasons for the rule of no recovery were probably sound, the rule sometimes works a great hardship which has caused some courts to modify their position. *Id.* at 13–189.

Of the courts that have retreated from the rule of no recovery for business losses, some have decided to allow recovery under limited circumstances for certain types of business losses. The Minnesota Supreme Court, in *City of Minneapolis v. Schutt*, 256 N.W.2d 260 (Minn.1977), has allowed compensation for loss of going-concern value, but only when the holder of the interest to be lost by condemnation can show "(1) that his going-concern value will in fact be destroyed as a direct result of the condemnation, and (2) that his business either cannot be relocated as a practical matter, or that relocation would result in irreparable harm to the interest." *Id.* at 265.

Other courts have abrogated the entire rule of no recovery for incidental or consequential damages that would include business losses of various kinds. The Wisconsin Supreme Court, in *Luber v. Milwaukee County*, 47 Wis.2d 271, 177 N.W.2d 380 (1970), made a very broad ruling that "[t]he rule making consequential damages *damnum absque injuria* is, under modern constitutional interpretation, discarded...." *Id.*, 177 N.W.2d at 386.[1] In reaching this decision, the Wisconsin Supreme Court observed that the rule of no recovery for incidental or consequential damages has always prevailed in this country, but that the importance of allowing recovery for such losses has increased significantly in modern times. It noted that incidental damages sometimes exceed the fair market value of the actual physical property taken. *Id.*, 177 N.W.2d at 384–385.

Supreme courts in at least three other states have interpreted their state constitutions to require compensation for various types of damages in addition to the value of the property taken. *E.g., State v. Hammer*, 550 P.2d 820, 826–827 (Alaska 1976); *Bowers v. Fulton County*, 221 Ga. 731, 146 S.E.2d 884, 890 (1966); *Jacksonville Expressway Auth. v. Henry G. Du Pree Co.*, 108 So.2d 289, 292–93 (Fla.1958).

We note that appellate courts have led the way to the modification of the rule in Michigan. The Michigan Court of Appeals, in *City of Detroit v. Michael's Prescriptions*, 143 Mich.App. 808, 373 N.W.2d 219 (1985), for example, has held that the going concern value of a business lost to condemnation is recoverable when the business cannot be successfully transferred. In that case, which involved a fact situation very similar to the instant case, the court stated that "recovery will be allowed where the business derives its success from a location not easily duplicated or where relocation is foreclosed for reasons relating to the entire condemnation project." *Id.*, 373 N.W.2d at 224–225. In that case, however, the Michigan Court of Appeals found precedent from the Michigan Supreme Court for allowing recovery of the going-concern value of a business lost through condemnation. It observed that the question of what circumstances would require recovery had been left to the appellate courts to answer. *Id.*, 373 N.W.2d at 222.

Not all courts that have reviewed this rule in modern times have modified or rejected it. The supreme court of at least one state, California, recognized the harshness of the

---

1. We note that this broad ruling was later narrowed by the Wisconsin Supreme Court. *See Rotter v. Milwaukee County Expressway and Transp. Comm'n*, 72 Wis.2d 553, 241 N.W.2d 440, 445–46 (1976).

traditional rule of no recovery, but held it was more appropriate for the legislative branch to decide whether additional losses in condemnation proceedings should be compensated. *See Community Redevelopment Agency of Los Angeles v. Abrams,* 15 Cal.3d 813, 126 Cal.Rptr. 473, 543 P.2d 905, *cert. denied,* 429 U.S. 869, 97 S.Ct. 180, 50 L.Ed.2d 149 (1976). The court concluded:

> We therefore reaffirm the longstanding and uniform rule of constitutional interpretation which holds that the provisions of the state and federal Constitutions providing for the payment of just compensation upon the taking or damaging of private property for public use ... do not require that compensation be paid for the loss of business goodwill sustained due to the exercise of the power of eminent domain, and that recourse for recoupment of injury of this kind must lie with the legislative branch.

*Id.,* 126 Cal.Rptr. at 486, 543 P.2d at 918.

The California court's decision may have been influenced by the fact that its legislature was actively involved in redressing some of these other kinds of losses. For example, the court mentioned that the legislature had recently enacted legislation that would render goodwill compensable to a certain extent in future cases. *Id.,* 126 Cal.Rptr. at 476, 543 P.2d at 908.

Although the Arizona legislature has not been similarly active, it has enacted legislation that provides some compensation for losses incurred in moving a business located on property being condemned. *See* Ariz.Rev. Stat.Ann. ("A.R.S.") § 11–963 (1990). Also, the *Carrow* case contains language, previously quoted, indicating that redress of business losses should be effected by the legislature.

Unlike the precedent in the State of Michigan, we do not find anything in our supreme court's rulings that would authorize this court to modify the existing rule of no recovery. LLI attempts to rely on the holding in *State ex rel. Miller v. Filler,* 168 Ariz. 147, 812 P.2d 620 (1991), which stated that " '[j]ust compensation' implies the full monetary equivalent of the loss sustained by the owner whose land the government has taken or damaged." *Id.* at 149, 812 P.2d at 622.

All the court was concerned with in that case, however, was a determination of just compensation in a partial-taking case. Pursuant to statute, damages in a partial taking are based not only on the market value of the property taken but also on the diminution in the remaining property's market value caused by the taking. *See* A.R.S. § 12–1122(A). The court in *Filler* determined that construction delay which is so significant that it may affect market value of property may be considered in determining severance damages under this statute. We find no relationship between what the court was dealing with in *Filler* and the issue whether business losses should be recoverable.

For all of the reasons discussed herein, any reexamination of Arizona's position on the issue whether business losses may be recovered in condemnation cases must be left to the Arizona Supreme Court or to our legislature.

■ LLI raises two other issues, neither of which has merit. First, it argues that the motion in limine was really a motion for summary judgment and that it was error for the trial court to allow the city to make this motion so close to trial in violation of Rule 3.2(g)(2), Local Rules of Practice for the Maricopa County Superior Court. Pursuant to *Young v. Peacock,* 19 Ariz.App. 574, 509 P.2d 646 (1973), however, it is clear that violation of this type of procedural rule is not jurisdictional. *See id.* at 576, 509 P.2d at 648. Since a legal issue was raised, rather than one that required LLI to develop any facts, there was no error in the trial court's consideration of the motion at that time.

■ Alternatively, LLI argues that it should at least be paid its costs for preparing for trial since these costs would have been avoided if the city had not waited so late to make its motion. Even if there were a basis for allowing LLI to recover these costs, this court could not reach the merits of LLI's request because of lack of jurisdiction. LLI did not request payment of such costs until after it had filed its motion for reconsideration. LLI's notice of appeal fails to state that appeal is being taken from the denial of that motion. The motion for reconsideration

was filed more than fifteen days after judgment was entered and, therefore, cannot be considered a motion for new trial pursuant to Rule 59(a) and (d), Arizona Rules of Civil Procedure, the denial of which would be reviewable pursuant to A.R.S. section 12–2102(B) when the underlying judgment is reviewed. Moreover, LLI filed its notice of appeal before the trial court had a chance to rule on the motion for reconsideration. The trial court therefore was divested of jurisdiction even to rule on it. *See Castillo v. Industrial Comm'n*, 21 Ariz.App. 465, 467, 520 P.2d 1142, 1144 (1974).

For the reasons stated herein, we affirm the ruling of the trial court that LLI's business losses are not compensable under Arizona law. Because of our affirmance on this issue, we need not review the city's additional contention regarding defects in LLI's pleadings.

JACOBSON, P.J., and GRANT, J., concur.