812 P.2d 620

STATE of Arizona, ex rel. Charles L. MILLER, Director, Department of Transportation, Petitioner,

v.

Honorable Charles A. FILLER, Judge of the Superior Court of Maricopa County, Arizona, Respondent.

TITLE USA (formerly U.S. Life Title Company of Arizona), an Arizona corporation, as Trustee under Trust No. 1036; Paloma Corporation; Hunt–Stephens Investments; Paul A. Hope, as Trustee of the William Herbert Hunt Trust Estate; A. Paul Stephens, Sr.; A. Paul Stephens, Jr.; Elizabeth Jane Stephens; Skunk Creek Properties, Inc.; Arrowhead Plaza Partners; Lawyers Title of Arizona, as Trustee of Trust No. 1378; Circle K Corporation; Southwest Savings; First Interstate Bank; Security Pacific Bank; Doris F. White; and Estate of E. Brooke White, Real Parties in Interest.

TITLE USA (formerly U.S. Life Title Company of Arizona), an Arizona corporation, as Trustee under Trust No. 1036; Paloma Corporation; Hunt–Stephens Investments; Paul A. Hope, as Trustee of the William Herbert Hunt Trust Estate; A. Paul Stephens, Sr.; A. Paul Stephens, Jr.; Elizabeth Jane Stephens; Skunk Creek Properties, Inc.; Arrowhead Plaza Partners; Lawyers Title of Arizona, as Trustee of Trust No. 1378; Circle K Corporation; Southwest Savings; First Interstate Bank; Security Pacific Bank; Doris F. White; and Estate of E. Brooke White, Petitioners,

v.

Honorable Charles A. FILLER, Judge of the Superior Court of Maricopa County, Arizona, Respondent.

STATE of Arizona, ex rel. Charles L. MILLER, Director, Department of Transportation, Real Party in Interest.

Nos. CV–90–0320–SA, CV–90–0319–SA.

Supreme Court of Arizona,
En Banc.

March 21, 1991.

Reconsideration Denied May 21, 1991.

Robert K. Corbin, Atty. Gen. by James R. Redpath, Joe Acosta, Jr., Laurie Woodall, Phoenix, for the State.

Sacks, Tierney, Kasen & Kerrick, P.A. by Robert V. Kerrick, Jean W. Rice, Leslie A. McCarthy, Phoenix, for Title USA, et al.

## OPINION

CORCORAN, Justice.

In this consolidation of two special action petitions, we address whether the trier of fact in a condemnation proceeding may consider the effect of construction delay on a property's market value when determining severance damages and special benefits. This issue arises in connection with eminent domain proceedings initiated for construction of the Outer Loop Freeway in the Phoenix area. Charles L. Miller, Director of the Arizona Department of Transportation (DOT), filed a special action petition against the respondent judge and several condemnees, asserting that the trial court had improperly ruled that a jury in a condemnation case may consider evidence of construction delay in measuring special benefits to property partially taken to accommodate the freeway. Title USA and other condemnees (collectively, Title USA) also filed a special action petition, arguing in contrast that the trial court's ruling was incorrect because it prohibited the jury from also considering construction delay for purposes of severance damages.

DOT's exercise of eminent domain against the condemnees in these proceedings is the largest in Arizona history and will result in at least 9 separate condemnation trials in which construction delay may be at issue. Therefore, pursuant to Ariz. Const. art. 6, §§ 5(1) and 5(3), and rule 7(c), Arizona Rules of Procedure for Special Actions, we accept jurisdiction of both petitions to resolve this question.

### Facts and Procedural History

The condemnation proceeding from which these special actions arise is the first in a series of trials concerning property taken to facilitate construction of the northwest section of the Outer Loop Freeway. This action involves the partial taking of two commercially-zoned parcels of land owned by Title USA and located within the Arrowhead Ranch development in Glendale.

At issue is the proper method for measuring just compensation for Title USA. Before trial, DOT moved to prevent Title USA from introducing evidence that delay in constructing the freeway would diminish the market value of its remaining property. DOT argued that any "after" valuation of the property must assume that the freeway was completed and fully operational immediately after the taking. In response, Title USA argued that, although proximity to a freeway interchange might eventually ben-

efit the remaining property, the market value after the taking actually decreased because the portion of the freeway adjacent to the land would not operate at maximum capacity for approximately 6 to 9 years after the date of the property's valuation.

The trial court denied DOT's motion in limine and ruled that Title USA's appraisers could testify regarding the effects of delay on both severance damages and special benefits. DOT filed a special action petition with the court of appeals challenging the trial court's ruling, but the appellate court refused to stay the trial pending disposition of the special action request.

After opening arguments, the trial court *sua sponte* reversed its ruling on DOT's motion and prohibited any testimony concerning construction delay. In response to Title USA's request for reconsideration, the trial court amended its ruling to allow Title USA to cross-examine DOT's appraisers concerning the effect of construction delay on special benefits, but prohibiting the introduction of evidence concerning the effect of construction delay on severance damages. The trial court then granted a mistrial because of the prejudicial effects to the parties of its reversal on the construction delay issue, and it continued the condemnation proceeding to allow the court of appeals to rule on DOT's special action request. The court of appeals, however, declined jurisdiction. Both Title USA and DOT then submitted special action petitions to this court.

### Discussion

I. Just Compensation

■ The Arizona Constitution prohibits the taking of private property without just compensation to the owner. Ariz.Const. art. 2, § 17. "Just compensation" implies the full monetary equivalent of the loss sustained by the owner whose land the government has taken or damaged. *See United States v. Miller*, 317 U.S. 369, 373, 63 S.Ct. 276, 279, 87 L.Ed. 336 (1943) (decided under the fifth amendment to the United States Constitution, which provides: "nor shall private property be taken for public use, without just compensation"); *see also* 3 J. Sackman, *Nichols' The Law of Eminent Domain* § 8.6, at 8–119 (rev. 3d ed.1990) (hereafter *Nichols*). The purpose of just compensation is to place the property owner in the position he or she would have occupied had no taking occurred. *See Defnet Land & Inv. Co. v. State ex rel. Herman* [I], 103 Ariz. 388, 389–90, 442 P.2d 835, 836–37 (1968); *see also Miller*, 317 U.S. at 373, 63 S.Ct. at 279–80; *Olson v. United States*, 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236 (1934).

■ In determining just compensation in a partial taking case, Arizona courts consider (1) the market value of the property actually taken by the condemnation and (2) the diminution in the remaining property's market value caused by the taking. *See Suffield v. State*, 92 Ariz. 152, 156, 375 P.2d 263, 266 (1962); *see generally* Note, *Eminent Domain: Admissibility of Planned Uses for Condemnation Valuation*, 25 Ariz.L.Rev. 761 (1983). This formula is codified by A.R.S. § 12–1122(A).[1] Severance damages, the second element in the just compensation formula, are offset by any special benefits the remaining prop-

---

1. Section 12–1122 provides in part:
   A. The court or jury shall ascertain and assess:
   1. The value of the property sought to be condemned. . . .
   2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff.

3. How much the portion not sought to be condemned and each estate or interest therein will be benefited separately, if at all, by construction of the improvement proposed by the plaintiff.
   . . . .
   B. As far as practicable, compensation shall be assessed for each source of damage separately.

erty receives because of the proposed improvement, *see* A.R.S. § 12–1122(A)(3), and are measured by the difference between the fair market value of the remaining property before and after the taking. *See Haney v. City of Tucson*, 13 Ariz.App. 296, 297, 475 P.2d 955, 956 (1970). "Fair market value" is the highest price the property will bring if offered for sale on the open market, allowing for reasonable time to find a purchaser knowing all uses and purposes to which the property is adapted and for which it is capable. *Mandl v. City of Phoenix*, 41 Ariz. 351, 354, 18 P.2d 271, 272 (1933).

In this case, therefore, the State must compensate Title USA not only for the land taken to accommodate the freeway, but also for the corresponding reduction in the value of the remaining commercially-zoned property. The date of valuation is the date of summons, February 13, 1987, *see* A.R.S. § 12–1123(A), and in determining severance damages, we measure the property's "before" value by its fair market value on that date. The parties disagree, however, on the proper method for measuring the remaining property's "after" value.

## II. A.R.S. § 12–1122 and Construction Delay

In its petition, DOT asserts that § 12–1122(A) requires the jury to measure both severance damages and special benefits by applying the fiction that the freeway was completed and fully operational immediately following the taking. In other words, DOT argues that the statute's reference to damages caused by "construction of the improvement in the manner proposed by the plaintiff" indicates that severance damages and special benefits reflect only the impact of the *completed* project on the remaining property's fair market value, not unavoidable incidental factors such as extended construction delay. Accordingly, under DOT's analysis, Title USA may not introduce evidence of the effects of construction delay on the market value of its remaining property.

DOT relies on language in *Defnet Land & Inv. Co. v. State ex rel. Herman* [II],

which states that a parcel's "after" value is "the value of the remainder after the strip of land is taken off and *after the construction of the improvements.*" 14 Ariz.App. 96, 102, 480 P.2d 1013, 1019 (1971) (emphasis added); *see also Mastick v. State*, 118 Ariz. 366, 370, 576 P.2d 1366, 1370 (App. 1978) (damages "measured by the difference between the value of the remainder before and after the taking *and construction*") (emphasis added). DOT also claims that *People by Department of Public Works v. Schultz Co.*, 123 Cal.App.2d 925, 268 P.2d 117 (1954), the "leading California case" on this subject, requires the jury to determine severance damages and special benefits by assuming that the proposed improvement is immediately completed. Because the Arizona legislature adopted A.R.S. § 12–1122 from California, this court has held that California law is very persuasive when interpreting our condemnation statute. *Viliborghi v. Prescott School Dist.*, 55 Ariz. 230, 232, 100 P.2d 178, 179 (1940).

In *Schultz*, the California Public Works Department sought to condemn highway frontage necessary for freeway expansion and construction. At trial, the property owner offered a jury instruction that severance damages must be measured by conditions existing on the date the State filed the complaint, but without considering when or whether the freeway would ever be constructed. Applying a statute identical to A.R.S. § 12–1122, the California court rejected the proposed instruction and held that the statute required the jury to assume that the improvement was completed. 123 Cal.App.2d at 933, 268 P.2d at 123.

We do not believe, however, that *Defnet* and *Schultz* are dispositive in this case. The predominant concern in any condemnation taking is the constitutional requirement that the property owner receive just compensation. Any damage award, regardless of the formula by which it is obtained, must satisfy that requirement. As the Arizona Court of Appeals has held:

The Constitution, both State and Federal, requires "just compensation". This Court holds that in meeting this test the

trial court must use the measure of damages [that] is most appropriate under the circumstances to insure fair compensation to the landowner whose property rights are taken. The constitutional test makes it mandatory upon the trial court to determine what is fair and just compensation, and to use this method or formula to arrive at [the] amount of damages.

*State ex rel. Herman v. Southern Pac. Co.,* 8 Ariz.App. 238, 242, 445 P.2d 186, 190 (1968).

■ Thus, although the compensation formula applied in *Defnet* and *Schultz* may have been the "most appropriate" under the circumstances of those cases, the true issue in this case is whether, to ensure just compensation, Title USA must be allowed to offer evidence of the effect construction delay will have on the market value of its property remaining after the taking. We conclude that it must be allowed to present that evidence.

### III. Market Value and Construction Delay

A leading eminent domain treatise states:

Where a partial taking is effected by eminent domain, the general rule is that any element of damage which results in a diminution of value of the remainder area is a factor which must be considered. The different elements of damage to remaining land recoverable when part of a tract is taken are as numerous as the possible forms of injury. The mere fact that injuries will be temporary and incident to the period of construction only is no ground for disallowing recovery, since a purchaser might pay less if he knew such injuries were to be inflicted.

*Nichols* § 14.08, at 14–187 through –190.

Consistent with this approach, the Arizona Court of Appeals has held that *any* factor bearing on the market value of a retained parcel is admissible. *State ex rel. Miller v. J.R. Norton Co.,* 158 Ariz. 50, 52, 760 P.2d 1099, 1101 (App.1988); *accord San Diego Gas & Elec. Co. v. Daley,* 205 Cal.App.3d 1334, 1345, 253 Cal.Rptr. 144,

150 (1988) (condemnee should be compensated for any characteristic of the project that causes an adverse impact on the fair market value of the remainder). For example, in *Moschetti v. City of Tucson,* the court of appeals held admissible evidence of a possible rezoning of a residential parcel into commercial property and the effect of that prospect on the land's market value. The court concluded that evidence having "a material bearing on market value should be admissible, without regard to whether it relates to an eventuality that might or might not occur in the 'near' or more 'distant' future, *as long as the prospect of the event has substantial present influence on market value.*" 9 Ariz.App. 108, 113, 449 P.2d 945, 950 (1969) (emphasis added).

The 6 to 9 year construction delay in this case could have a substantial present influence on the property's market value. A potential purchaser today conceivably will pay less for commercial property adjacent to a freeway that will not be fully constructed for several years than he or she will pay for comparable property at an interchange that is completed and functioning. In other words, the delay places a cloud upon the property that may reduce its appeal to prospective buyers, potentially lowering the property's market value, and thereby creating a real and present injury. *See City of Salinas v. Homer,* 106 Cal. App.3d 307, 165 Cal.Rptr. 65 (1980) (property owners awarded damages because they would be required to advise potential purchasers that the city owned a strip of land that, in the future, it could use for purposes other than underground utilities).

For example, prior to the taking in this case, the Circle K Corporation held a lease from Title USA on the property adjacent to the freeway. Assuming that Circle K exercised the lease's extension options, the agreement would have provided Title USA with $90,000 income per year for 30 years. According to Title USA, however, Circle K canceled the lease, pursuant to its terms, because it concluded that construction delay would diminish the location's profitability. Although the finder of fact must determine what weight to give this evidence

when measuring damages, we have held that rental income is a proper element to consider when valuing property because it affects the price a willing buyer would pay and a willing seller would accept. *See Stockholders & Spouses of Carioca Co. v. Superior Court*, 141 Ariz. 506, 509, 687 P.2d 1261, 1264 (1984); *see also State v. Hollis*, 93 Ariz. 200, 204, 379 P.2d 750, 752 (1963). Thus, to preclude Title USA from offering evidence of the impact of construction delay on market value would ignore our responsibility in condemnation proceedings "to bring the values of the real-world market place into the courtroom." *See Moschetti*, 9 Ariz.App. at 112–13, 449 P.2d at 949–50.

For the same reason, we do not believe that § 12–1122(A) requires a different outcome. Arbitrary application of a statute is not required when it would result in unjust compensation to the property owner. *Uvodich v. Board of Regents*, 9 Ariz.App. 400, 406, 453 P.2d 229, 235 (1969) (discussing § 12–1123's requirement that property be valued as of the date of summons).[2]

Developments in California's eminent domain law since *Schultz* aptly illustrate the potential for unjust compensation if we were to apply the *Defnet/Schultz* rule by rote in this case. In 1975, the California legislature replaced the statute at issue in *Schultz* with more comprehensive eminent domain legislation. In particular, § 1263.440 was added to the California Code of Civil Procedure to remedy the injustice occasioned by the *Schultz* holding. It provides:

The amount of any damage to the remainder and any benefit to the remainder *shall reflect any delay in the time* when the damage or benefit *caused by the construction* and use *of the project* in the manner proposed by the plaintiff will actually be realized.

Cal.Civ.Proc.Code § 1263.440(a) (Deering 1981) (emphasis added). In its comment to the statute, the Law Revision Commission expressly repudiated the indiscriminate approach to compensation applied in *Schultz:*

It has been held that damage and benefit must be based on the assumption that the improvement is completed. *See, e.g., People v. Schultz....* Subdivision (a) alters this rule and requires that compensation for damage to the remainder (and the amount of benefit offset) be computed in a manner that will take into account any delay in the accrual of the damage and benefit under the project as proposed.

Although we must evaluate a statute similar to California law prior to 1975, we do not believe that we must arbitrarily apply the rule in *Defnet* simply for consistency's sake. We are governed foremost by the Constitution, and the Constitution requires just compensation. To ensure just compensation, we believe that Title USA must be allowed to present evidence of the impact of construction delay on the property's market value.

We caution, however, that we hold only that construction delay *may* be compensable. The ultimate determination is for the trier of fact in each case. The key consideration is whether and to what extent the delay affects market value. If, as is quite usual, the construction delay unavoidably

**2.** In *Uvodich*, the court noted that § 12–1123's selection of the summons date as the measuring date for the property's market value need not be applied when it will result in unjust compensation. The potential for unjust compensation is particularly high in cases, like *Uvodich*, in which the property's decreased value is directly attributable to the taking itself, a phenomenon known as "condemnation blight." *See* 7A *Nichols* § 14.02. Condemnation blight situations, much like the situation we address in this case, often raise issues that require additional effort to ensure just compensation. In this vein, our legislature recently has amended A.R.S. § 28–1865, concerning the purchase, sale, or condemnation of land for transportation purposes, to read:

In acquiring property for transportation purposes pursuant to this section, when determining the market value of the property to be taken and the market value of the remainder, if any, in the before condition, a decrease or increase in the market value of the real property prior to the date of valuation caused by the public project for which the property is to be acquired or by the likelihood that the property would be acquired for the project shall be disregarded.

A.R.S. § 28–1865(L).

associated with a project does not affect the property's value, that delay is irrelevant for purposes of severance damages and special benefits. "Just compensation" requires only that the State remedy real damages resulting from the taking, not imagined harms or dubious attempts to inflate condemnation awards. As noted in *Nichols:* "Damages alleged to flow from the taking of part of a tract are not allowed if they can have no effect on present market value. Thus, damages that are too contingent, speculative and remote to affect the present market value need not be considered." 4A *Nichols* § 14.09, at 14–241.

### Conclusion

We therefore hold that, if construction delay is so significant that it reasonably can be expected to affect the property's market value as of the date of valuation, the trier of fact may consider that delay in determining severance damages, if any, and special benefits, if any. Accordingly, Title USA's request for special action relief is granted and DOT's request is denied.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.