978 P.2d 103

**STATE of Arizona, ex rel., Charles L. MILLER, Director, Department of Transportation, Plaintiff–Appellant,**

v.

**WELLS FARGO BANK OF ARIZONA, N.A. (f/k/a First Interstate Bank of Arizona, N.A.) Defendant–Appellee.**

No. 1CA–CV97–0389.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 20, 1998.

Review Denied May 25, 1999.

---

Grant Woods, Attorney General By James R. Redpath, Assistant Attorney General and Joe Acosta, Jr., Assistant Attorney General and George E. "Ted" Mariscal, Assistant Attorney General, Phoenix, for Appellant.

Streich Lang, P.A. By Dan M. Durrant and Robert E. Miles, Phoenix, and Bell Law Office By Leonard M. Bell, Scottsdale, for Appellee.

## OPINION

GARBARINO, Judge.

¶ 1 The State appeals from the jury's award of severance damages to Wells Fargo Bank of Arizona (the Bank) to compensate for property taken to facilitate construction of the northwest section of the Outer Loop Freeway (the freeway) in the Phoenix area. The State asserts that the trial court erred by not granting its motions for a directed verdict or its motion for judgment notwithstanding the verdict (JNOV). The State also claims that it is entitled to a new trial because the trial court erroneously admitted evidence and improperly instructed the jury. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 The Arrowhead Ranch master planned community (Arrowhead Ranch) was designed in the early 1980's as a major residential community consisting of numerous subdivisions, two Arnold Palmer designed golf courses, a system of lakes, and many

other amenities. On February 13, 1987, the State filed multiple condemnation cases in order to partially take residentially-zoned parcels in Arrowhead Ranch needed for construction of the freeway. After approximately eleven years of proceedings, the court held a condemnation trial on four of the parcels.

¶ 3   At trial, the Bank called Dr. Claude Gruen, an urban economist, to testify regarding the general negative effect of freeways on adjoining residential property values. Gruen stated that proximity to a freeway causes problems such as dirt, noise, pollution, and vibration, resulting in less demand and lower property value for the residential areas closest to the freeway. Gruen concluded that the freeway reduced the property value of the residential parcels which adjoined the freeway.

¶ 4   The Bank later called John Fiene, a real estate appraiser, to testify regarding the value of the parcels in question. Fiene stated that he had completed an evaluation and prepared a report regarding the parcels' fair market value. Fiene noted that the condemned parcels' highest and best use was residential. He stated that as a result of the condemnation, the parcels closest to the freeway lost their intrinsic value and could not be sold by themselves.

¶ 5   Fiene compared the sales data of other master planned communities to the sales at Arrowhead Ranch, and he compared sales of Arrowhead Ranch homes built by the same builder near the freeway to homes built further away from the freeway. He concluded that the values of the lots in close proximity to the freeway were generally much lower in comparison to lots more distant from a freeway.

¶ 6   The Bank offered evidence to prove that the uncertainty of the location of the freeway, its construction schedule, and its elevation further drove down the parcels' values. The Bank also offered evidence that the Arizona Department of Transportation had refused to commit to the location of the freeway or its completion date. After considering all of these factors and the proximity of the freeway to the condemned parcels, Fiene determined that the Bank's severance damages were more than thirty-five million

dollars. Fiene noted that the freeway was not a benefit to Arrowhead Ranch.

¶ 7   At the conclusion of the Bank's case, the State moved for multiple directed verdicts on the issue of damages. The trial court denied each of these motions.

¶ 8   The State proceeded with its case and called John Herbert, an economist, who testified that the loss of sales volume and decreases in land value at Arrowhead Ranch were related to the economic downturn of the 1980's. The State also called Robert Francy as its appraisal expert. Francy testified that the freeway was a benefit to Arrowhead Ranch. He further stated that the freeway's construction delay neither caused a reduction in the value of the parcels nor deterred potential developers from buying the parcels. Francy implied that the lack of purchasers and the reduction in value resulted from the economic downturn of the 1980's. He concluded that the Bank should not receive severance damages for the parcels.

¶ 9   At the close of evidence, the State moved again for directed verdicts. The court denied the motions. The court instructed the jury, which after deliberations, awarded the Bank approximately four million dollars in severance damages for three of the four parcels. The court denied the State's motion for JNOV and its motion for a new trial. The State timely appealed.

### ISSUES

I.   Whether the State was entitled to a directed verdict or JNOV on the issue of severance damages.

II.   Whether the trial court erred in its evidentiary rulings entitling the State to a new trial.

III.   Whether the trial court improperly instructed the jury.

### DISCUSSION

I.   *Directed Verdict or JNOV for Severance Damages*

¶ 10   Severance damages are those "which will accrue to the portion not sought to be condemned by reason of its severance

from the portion sought to be condemned...." Ariz.Rev.Stat. Ann. (A.R.S.) § 12–1122(A)(2) (Supp.1997). Damage resulting from proximity to a freeway built after condemnation is one type of severance damage. *See generally State ex rel. Miller v. J.R. Norton Co.*, 158 Ariz. 50, 52, 760 P.2d 1099, 1101 (App.1988) ("[E]vidence of any factor bearing on the market value of the retained parcel, such as ... proximity to the highway ... is admissible.").

¶ 11   The State argues that the trial court should have granted its motions for directed verdict or, in the alternative, JNOV because: 1) the Bank failed to present evidence demonstrating that the proximity damages were special and unique to the three parcels or that people were denied access from the parcels to the public roadway, 2) the evidence was undisputed that the portions of the freeway affecting the parcels were completed in five years or less, not ten years, and/or 3) Fiene failed to use a recognized valuation method in determining the severance damages. We disagree.

### A.   Standard of Review

¶ 12   We review a denial of a motion for a directed verdict or JNOV *de novo. Shoen v. Shoen*, 191 Ariz. 64, 65, 952 P.2d 302, 303 (App.1997). "[W]e view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* A directed verdict or JNOV is granted "only if the facts presented in support of a claim have so little probative value that reasonable people could not find for the claimant." *Id.*

### B.   Proximity Damages

¶ 13   Relying on *J.R. Norton* and *Arizona Hercules Copper Co. v. Protestant Episcopal Church Corp. of Arizona*, 21 Ariz. 470, 190 P. 85 (1920), the State claims that the Bank was not entitled to severance damages because it failed to demonstrate that the damage to the parcels was special and unique.

¶ 14   *J.R. Norton* also involved land taken by the State in order to facilitate construction of a freeway. 158 Ariz. at 51, 760 P.2d at 1100. In that case, the court accepted the concept that traffic noise constitutes general damage affecting all property owners in the neighborhood and, as such, is not compensable because it is not unique and peculiar to the property. *Id.* at 52, 760 P.2d at 1101. However, the court went on to explain that it could apply this general statement of the law to the facts of *J.R. Norton* because *J.R. Norton* involved a taking. *See id.* (distinguishing compensability of noise damage for non-condemned property owners as opposed to damages suffered by condemned property owners).

¶ 15   *J.R. Norton*, like the case before us, involved a severance. A taking is a necessary element of a severance case, and the taking, no matter how large or small, is the distinguishing factor. Once the condemnee establishes a taking, any factor bearing on the market value of the remaining parcel is admissible. *See id.* We do not believe that *J.R. Norton* or *Arizona Hercules* require that in order to collect severance damages as a result of a taking, the condemnee must show that the damages suffered are unique to the condemned property.

¶ 16   The State poses a hypothetical involving a freeway built abutting the land of two separate single family homes in order to argue that "public policy ... support[s] a rule prohibiting compensation for general proximity factors." In the hypothetical, the State takes a small part of Homeowner A's property in order to construct a freeway. The State does not take any of Homeowner B's property. The State argues that a rule allowing the jury to consider all damages potentially leading to the diminution of the land value *only* after a taking would lead to unequal treatment between the homeowners. For example, in the hypothetical, Homeowner A could claim severance damages while Homeowner B could not, because the State only took land from Homeowner A.

¶ 17   Although at first blush the outcome of the State's hypothetical may seem inequitable, we believe it is a fair representation of the method by which Arizona landowners are compensated for severance damages. The Arizona Constitution mandates just compensation for the taking of private property. *See* Ariz. Const. art. 2, § 17. In the hypo-

thetical, the State took property from Homeowner A, and it is constitutionally required to justly compensate for that taking. The State did not take land from Homeowner B, and it need not compensate Homeowner B. According to the State, equity would be better served if the State did not compensate either homeowner. The State would have us penalize Homeowner A because Homeowner B was not fortunate enough to have land taken. While we make no comment on Homeowner B's rights, we conclude that Homeowner A has a right to be compensated for severance damages to the retained parcel.

¶ 18 The trial court properly allowed the jury to consider the loss of value resulting from the proximity of the freeway to the remaining portion of the Bank's parcels when determining severance damages. *See J.R. Norton,* 158 Ariz. at 52, 760 P.2d at 1101; *See generally* A.R.S. § 12–1122(A)(2). If we did not allow evidence of a factor which potentially diminishes the value of the subject land, we would be denying the condemnee's constitutional right to just compensation.

### C. Denial of Access and Freeway Delay

¶ 19 The State argues that because the parcels have always had some access to the public roadways, the trial court should not have allowed the jury to consider the freeway's construction delay when calculating severance damages. We have reviewed the record and we do not find a request by the Bank for severance damages based on a denial of access. In fact, the State concedes as much in its brief. Instead, the Bank based its claim for severance damages on how the uncertainty of the freeway's completion date, its location, and its elevation affected the market value of the parcels.

¶ 20 *State ex rel. Miller v. Filler,* 168 Ariz. 147, 148, 812 P.2d 620, 621 (1991) also involved partially taken land in Arrowhead Ranch to facilitate construction of the freeway. In that case, the Arizona Supreme Court held that the owner of a partially taken parcel "must be allowed to offer evidence of the effect construction delay will have on the market value of its property remaining after the taking." *Id.* at 151, 812 P.2d at 624. The supreme court noted that a six to nine-year construction delay could have a substantial influence on a property's market value. *See id.* Furthermore, the supreme court held that "the finder of fact must determine what weight to give this evidence when measuring damages. . . ." *Id.* at 151–52, 812 P.2d at 624–25.

¶ 21 The Bank offered the testimony of Ron Ewing, a civil engineer on the Arrowhead Ranch project. Ewing testified that the uncertainty surrounding the freeway's location and completion date affected the property's ability to be sold. In furtherance of this idea, Fiene testified that the delay in the freeway's construction, among other factors, affected the parcels' value. The Bank offered ample evidence to allow the jury to decide whether the construction delay had affected the parcels' market value. The trial court properly denied the State's motions for a directed verdict and JNOV.

¶ 22 The State also claims that portions of the freeway were completed within five years and that the frontage roads were always open for travel. It should be remembered, however, that the Bank did not base its claim for severance damages on a lack of access to the freeway. Instead, the Bank sought damages due to the uncertainties associated with the freeway's completion date and location, and the effect of those uncertainties on its market value. In any event, it was for the jury to consider the weight to be given to this evidence. *Id.*

### D. Fiene's Appraisal Methodology

¶ 23 The State does not challenge John Fiene's credentials as an expert. Rather, the State claims that Fiene used an improper valuation method in determining severance damages and, therefore, that the trial court should have granted its motions for a directed verdict or JNOV. We disagree because the record demonstrates that Fiene employed proper appraisal methods in making his determination of value.

¶ 24 There are three different appraisal methodologies commonly used by appraisers: the sales comparison approach, the cost approach, and the income approach. While State acknowledges that Fiene used the sales comparison approach in determining the "before value" of the property, it contends that Fiene did not use a recognized method in

determining the property's "after value." However, Fiene testified that he had performed a *complete* appraisal utilizing all three approaches, as recommended by the Uniform Standards of Professional Appraisal Practice.

¶ 25 Moreover, even if Fiene had not done a valuation "according to the standard methodology of professional appraisers, then that failure went to the weight of [his] opinions rather than to admissibility." *Maricopa County v. Barkley*, 168 Ariz. 234, 239–40, 812 P.2d 1052, 1057–58 (App.1990). The State "was entitled both to call professional appraisers as witnesses in rebuttal and to cross-examine" Fiene. *Id.* at 240, 812 P.2d at 1058. It was then up to the jury to resolve any conflict in the testimony. *See id.* The trial court properly denied the State's motions for a directed verdict and JNOV.

## II. *New Trial Based on the Evidentiary Rulings*

¶ 26 The State asserts that because the trial court made erroneous rulings on evidentiary matters, it is entitled to a new trial. We disagree.

### A. Standard of Review

¶ 27 "We will not disturb a trial court's rulings on the exclusion or admission of evidence unless a clear abuse of discretion appears and prejudice results." *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 506, 917 P.2d 222, 235 (1996). "A trial judge has broad discretion to grant or deny a new trial." *State Farm Fire and Cas. Co. v. Brown*, 183 Ariz. 518, 521, 905 P.2d 527, 530 (App.1995).

### B. Fiene's Appraisal Methodology

¶ 28 The State claims that if we find that it was not entitled to a directed verdict or JNOV on the issue of severance damages, we should order a new trial in which proper appraisal methods are used. Because we have already determined that Fiene's appraisal methods were appropriate, the State is not entitled to a new trial on this basis.

### C. The Noise Wall

■ ¶ 29 The State planned to offer evidence of a short, intermittent wall that was built on the north side of the freeway adjacent to one of the parcels. The State designed the wall to reduce noise. The trial court granted the Bank's motion to preclude evidence of the wall. The State filed a motion for reconsideration arguing that evidence of the noise wall should be considered by the jury for purposes of mitigation. The court denied the motion.

¶ 30 The State constructed the wall and retained the right to remove it at any time, should it need to do so. Accordingly, prospective purchasers had no assurance that the wall would remain in place. In addition, the State offered no testimony regarding how effective the wall was at reducing noise. Because the effectiveness of the wall was unknown and the State maintained the right to remove it at any time, the trial court did not abuse its discretion by precluding testimony about it. *See* Ariz. R. Evid. 403.

### D. Gruen's Testimony

■ ¶ 31 The State argues that the trial court erred by admitting Dr. Claude Gruen's testimony because he did not perform a specific study to determine the economic impact of the freeway on the Bank's parcels. The Bank called Gruen to testify as to his expert opinion on the general effect a freeway has on the value of nearby residential property. Gruen based his testimony on a review of materials published on the subject, his prior appraisal studies, his own experience as an urban economist, and on an inspection of Arrowhead Ranch. He testified that he was able to take the negative impact that freeways generally have on adjacent residential parcels and conclude how the freeway specifically impacted the parcels at Arrowhead Ranch. We find that the trial court properly exercised its discretion by allowing Gruen to testify as to his expert opinion on the effect the freeway had on the parcels. *See* Ariz. R. Evid. 702, 703.

### E. Delays in Freeway Construction

■ ¶ 32 The State asserts that the trial court erred by allowing Fiene to base his severance damage calculations on the actual ten-year delay in the construction of the freeway, instead of the five-year delay that was anticipated at the time of condemnation.

¶ 33 The State must justly compensate for the *real* damages resulting from the tak-

ing. *See Filler*, 168 Ariz. at 153, 812 P.2d at 626. In *Filler*, the State claimed that A.R.S. section 12–1122(A) required the jury to measure severance damages assuming that the freeway was completed and fully operational at the date of condemnation. *Id.* at 150, 812 P.2d at 623. The supreme court disagreed, noting that according to the State's interpretation of A.R.S. section 12–1122(A), the landowner might not receive his or her constitutional entitlement to just compensation if the actual delay time was different from that anticipated on the date of condemnation. *Id.* at 150–51, 812 P.2d at 623–24.

¶ 34 The State contends that we should utilize a fictional delay period rather than the actual delay. In keeping with *Filler*, we find that evidence of the actual delay time, rather than mere speculation, is the best evidence to determine just compensation. As in *Filler*, the delay placed a cloud upon the property, reducing its appeal to the prospective buyers, lowering the parcels' market value, and creating a real and present injury. *See id.* at 151, 812 P.2d at 624. It was not an abuse of discretion to allow the jury to determine how much the actual delay impacted the parcels' market value. *See id.* at 152, 812 P.2d at 625.

### F. Testimony of the Acoustical Expert

%¶ 35 The Bank called Robert Larabell, an acoustical consultant, to testify regarding the level of noise generated by the freeway. The State did not call an acoustical expert, but rather relied on a noise study done by consulting engineers. Larabell noted that the noise levels relied on by the State were accurate, assuming that the vehicles were traveling at the posted freeway limits. Larabell also stated that the noise levels would actually be higher because the average freeway driving speed is at least sixty-five miles per hour.

¶ 36 The State made a relevancy objection to Larabell's testimony regarding people driving ten miles per hour over the posted speed limit. The court overruled the objection and advised counsel that he was objecting to testimony that was more appropriately attacked on cross-examination. The State claims that this ruling was erroneous.

¶ 37 We find that the trial court was well within its discretion when it overruled the objection. The State could have attacked, and indeed did attack on cross-examination, the premise that all people drive ten miles per hour over the speed limit. It was then for the jury to afford the proper weight to the contradicting testimony. *See Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 45, 945 P.2d 317, 356 (App.1996).

### III. *New Trial Based on the Jury Instructions Not Given*

¶ 38 The State contends that the trial court erroneously refused several of its requested jury instructions, thereby depriving it of a fair trial. We disagree.

### A. Standard of Review

¶ 39 A trial court must give a requested instruction if: 1) the evidence supports the instruction, 2) the instruction is appropriate under the law, and 3) the instruction pertains to an important issue and was not adequately covered by another instruction. *See DeMontiney v. Desert Manor Convalescent Ctr. Inc.*, 144 Ariz. 6, 10, 695 P.2d 255, 259 (1985). The test for the sufficiency of the jury instructions given is "whether, taken as a whole, they allow the jury to 'gather the proper rules to be applied in arriving at the correct decision.'" *J.R. Norton*, 158 Ariz. at 52, 760 P.2d at 1101 (quoting *Kauffman v. Schroeder*, 116 Ariz. 104, 106, 568 P.2d 411, 413 (1977)).

### B. The Refused Instructions

¶ 40 The State's instructions requesting that: 1) proximity damages must be specific and unique to be compensable, 2) delay is not compensable, 3) there were no compensable damages for two of the parcels after the opening of a freeway section, 4) there were no compensable damages after opening of frontage roads, 5) it was not proper to add separate items of damages in deciding the amount of severance damages, 6) damages for delay should have been determined by the foreseeable delay at the time of condemnation, and 7) the Bank was entitled to compensation for noise created by people who drive in excess of the posted speed limit, were, as previously determined in this opinion, either not supported by the evidence or not proper under the law. Therefore, the

trial court properly refused these instructions. *See DeMontiney,* 144 Ariz. at 10, 695 P.2d at 259.

¶ 41 The State further argues that the trial court erred by refusing its requested jury instruction regarding the measure of severance damages. The State claims that in the absence of its requested instruction, the jury may have awarded severance damages without finding a decrease in value. The trial court instructed the jury that the Bank was entitled to severance damages "if the fair market value of the remaining property is reduced by the taking or by the proposed improvement." The trial court also instructed the jury to measure the difference in fair market value before the taking and after the taking. The trial court's instructions adequately covered this requested jury instruction.

¶ 42 The State claims that the trial court erred by refusing to instruct the jury that it could not award severance damages for a decrease in value due to the economic conditions. The trial court instructed the jury that it could award "severance damages if the fair market value of the remaining property is reduced by the taking or by the proposed improvement." This instruction adequately advised the jury that it should award severance damages only if the value of the parcels was decreased by the actions of the State.

¶ 43 The State also argues that the trial court erred by refusing to give its instruction regarding the uncertainties of the design and location of the freeway. The State's instruction would have advised the jury that they could not consider uncertainty associated with the freeway as a factor attributing to the decreased market value of the parcels. The State's instruction would have been contrary to the holding of *J.R. Norton* that "evidence of any factor bearing on the market value of the retained parcel ... is admissible." 158 Ariz. at 52, 760 P.2d at 1101. As such, the trial court properly refused this instruction.

IV. *New Trial Because of the Cumulative Effect of Errors*

¶ 44 Last, the State seeks a new trial based on the cumulative effect of the trial court's errors. *See Town of Paradise Valley v. Laughlin,* 174 Ariz. 484, 490, 851 P.2d 109, 115 (App.1992) (concluding that even if errors standing alone do not warrant a new trial, the cumulative effect of the errors could deprive the litigant of a fair trial). Because we find that the trial court did not err, the State's argument fails.

CONCLUSION

¶ 45 We hold that the State was not entitled to a directed verdict or JNOV, and it is not entitled to a new trial. Accordingly, the judgment is affirmed.

CONCURRING: JAMES B. SULT, Presiding Judge, and THOMAS C. KLEINSCHMIDT, Judge.