NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CITY OF PHOENIX, *Plaintiff/Appellee*,

*v.*

ESPERANZA I. GONZALES, et al., *Defendants/Appellants*.

No. 1 CA-CV 25-0308

FILED 02-11-2026

Appeal from the Superior Court in Maricopa County
No.  CV2021-009417
No.  CV2022-009780
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Nossaman LLP, Phoenix
By Christopher W. Kramer, Brian Imbornoni, William E. Bassoff
*Counsel for Plaintiff/Appellee*

Wilenchik & Bartness PC, Phoenix
By Dennis I. Wilenchik, William M. Fischbach, Garo V. Moughalian
*Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

Judge Andrew J. Becke delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**B E C K E**, Judge:

¶1 Defendants Esperanza I. Gonzales, as Trustee of the Esperanza I. Gonzales Trust, and El Tacazo, Inc., appeal a judgment condemning a portion of their property. They challenge the amount of damages awarded, arguing the superior court improperly precluded their expert witness's testimony. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2 Gonzales owns real property along Central Avenue in South Phoenix where El Tacazo operates a quick-serve restaurant (the "Property"). The Property is slightly more than 16,000 square feet in size, or about a third of an acre.

¶3 In 2019, the City of Phoenix authorized the South Central Extension/Downtown Hub Light Rail Project (the "Project"), which extends the City's light rail transportation system south along Central Avenue. As part of the Project, in June 2021, the City filed this eminent domain action to acquire about 1,000 square feet of the Property so it could widen Central Avenue and to obtain gas and water easements. In July 2021, the superior court accepted the parties' stipulation and issued an order granting the City immediate possession of the acquired parcel and easements. It also granted the City a temporary construction easement for the duration of the Project.

¶4        The primary remaining issue was the amount of just compensation the City owed Gonzales for the acquired land and easements.[1] Arizona law requires just compensation for (1) the value of the condemned property and (2) if the condemned property is part of a larger parcel, "the damages that will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff." A.R.S. § 12-1122(A)(2). This second category is known as "severance damages." *See State v. Foothills Rsrv. Master Owners Ass'n, Inc.*, 259 Ariz. 92, 97, ¶ 12 (2025).

¶5        Gonzales did not dispute the City's evidence regarding the value of the acquired parcel and easements ($18,264) or the temporary construction easement ($527 per year). She did, however, challenge the City's assertion that it owed her no severance damages. She disclosed the report of real estate appraiser William Dominick, who opined that Gonzales had incurred $594,960 in severance damages as a result of an anticipated increase in crime at the Property and an inability to sell the Property during the light rail construction period.

¶6        The City moved to preclude Dominick's opinion on the grounds that it was (1) irrelevant and/or unfairly prejudicial under Arizona Rules of Evidence 401 through 403 and (2) not based on sufficient facts or data as required by Arizona Rule of Evidence 702.

¶7        After full briefing and oral argument, the superior court granted the motion under Rule 702. It ruled that Dominick's opinion regarding increased crime at the Property was speculative and he did not provide adequate support for his damage calculations. The court also ruled that the damages Dominick calculated were non-compensable because they were either business losses or the result of the City's proper exercise of its police power. The court also ruled that Dominick's opinion that the Property decreased in value because Gonzales was unable to sell it during

---

[1] In 2022, Gonzales and El Tacazo filed a complaint against the City and Valley Metro of Phoenix for trespass and inverse condemnation, alleging light rail construction vehicles and equipment trespassed beyond the boundaries of the temporary construction easement causing extended periods where El Tacazo could not operate its business. That action was consolidated with this eminent domain case, and eventually settled and dismissed with prejudice.

the construction period was speculative and his calculations were not supported by sufficient facts or data.

¶8 The resulting judgment awarded Gonzales $20,372 as full compensation for the City's acquisition and the temporary construction easement, with no award of severance damages. Gonzales timely appealed.

¶9 We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-2101(A)(1), -120.21(A)(1).

## DISCUSSION

¶10 Gonzales argues the superior court erroneously excluded Dominick's severance damages opinion. The proponent of expert testimony has the burden of establishing its admissibility by a preponderance of the evidence. *State v. Bernstein*, 237 Ariz. 226, 228, ¶ 9 (2015). This court reviews the superior court's admissibility ruling for an abuse of discretion, *id.*, viewing "the evidence in the light most favorable to its proponent." *State v. Ortiz*, 238 Ariz. 329, 333, ¶ 5 (App. 2015) (cleaned up). "We will not disturb a trial court's rulings on the exclusion or admission of evidence unless a clear abuse of discretion appears and prejudice results." *State ex rel. Miller v. Wells Fargo Bank of Ariz., N.A.*, 194 Ariz. 126, 131, ¶ 27 (App. 1998).

¶11 Rule 702, which governs expert opinion testimony, states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

**¶12**          The rule requires the trial court to serve as a "gatekeeper" to ensure that only reliable expert witness testimony is admitted in evidence. *Bernstein*, 237 Ariz. at 227, 229, ¶¶ 1, 11; Ariz. R. Evid. 702 cmt. (2012). It is not intended to replace the adversary system or "supplant traditional jury determinations of credibility and the weight to be afforded otherwise admissible testimony." Ariz. R. Evid. 702 cmt. (2012). Evidence may be admissible even if it is "shaky," and its infirmities should be exposed to the jury through established adversarial methods, rather than exclusion. *See Bernstein*, 237 Ariz. at 229, ¶11; Ariz. R. Evid. 702 cmt. (2012).

**¶13**          Rule 702(b)'s requirement that expert testimony be based on sufficient facts or data requires the court to determine whether the expert considered enough information to proffer a reliable opinion. *See* 29 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6268 (2d ed. 1982).[2] It is a "quantitative rather than qualitative analysis," Fed. R. Evid. 702 advisory committee's note to the 2000 amendment, and what facts and data are sufficient will vary with the nature and scope of the opinion offered, Wright & Miller, *supra*, at § 6268.

**¶14**          In this case, Dominick's opinions concerned the severance damages Gonzales suffered as a result of the City's condemnation of a portion of the Property. The Arizona Constitution prohibits the taking of private property without just compensation to the owner, Ariz. Const. art. 2, § 17, and the law requires that the owner be placed "in the position he or she would have occupied had no taking occurred," *State ex rel. Miller v. Filler*, 168 Ariz. 147, 149 (1991). "In determining just compensation in a partial taking case, Arizona courts consider (1) the market value of the property actually taken by the condemnation and (2) the diminution in the remaining property's market value caused by the taking." *Id.*; *see also* A.R.S. § 12-1122(A); *Foothills Rsrv.*, 259 Ariz. at 97, ¶ 12. This second component of damages—"severance damages"—is measured by the difference between the fair market value of the remaining property – the highest price any buyer would pay if it was offered for sale on the open market – before and after the taking. *Filler*, 168 Ariz. at 150; *see also* A.R.S. § 12-1123(A) (the right to compensation accrues on the date of the summons and damages are measured from that date).

---

[2] "Because [Arizona] Rule 702 mirrors its federal counterpart, we may look to the federal rule and its interpretation for guidance." *Bernstein*, 237 Ariz. at 228, ¶ 9.

¶15            "Evidence of any factor bearing on the market value of the retained parcel . . . is admissible." *State ex rel. Miller v. J.R. Norton Co.*, 158 Ariz. 50, 52 (App. 1988). However, just compensation is limited to compensating the landowner for real damages resulting from the taking, "not imagined harms or dubious attempts to inflate condemnation awards." *Filler*, 168 Ariz. at 153. "[D]amages that are too contingent, speculative and remote to affect the present market value need not be considered." *Id.*; *see also City of Tucson v. Rickles*, 109 Ariz. 82, 85 (1973) ("Games of 'let's pretend,' should play no part in condemnation cases.") (internal citation omitted); *Ariz. Water Co. v. City of Yuma*, 7 Ariz. App. 53, 58 (1968) ("As a general rule, remote and speculative damages are disregarded in condemnation cases.") (internal citation omitted).

## A.    The Superior Court Did Not Abuse Its Discretion by Precluding Dominick's Opinions Regarding Increased Security Costs.

¶16            Dominick opined that the Property would be permanently subject to higher security and maintenance costs as a result of an "expected" increase in vagrancy and vandalism due to the construction of an adjacent light rail passenger station. He estimated this additional security and maintenance would cost $10,000 per year and calculated that it reduced the value of the Property by $166,667. The superior court precluded this evidence under Rule 702(b), finding it was speculative and not based on sufficient facts or data. We reject Gonzales's argument that the court abused its discretion in doing so.

¶17            Dominick did not base his opinion on any area crime statistics or sales data, although he noted Gonzales's claim that transient traffic at the Property increased after construction began.[3] *See* Ariz. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."). He also did not cite his knowledge and experience as a real estate appraiser as a basis for his opinion that the light rail station would increase crime in the area. Rather, he relied on three internet articles: one discussing homelessness in Los Angeles, a second discussing a general rise in crime involving public transportation in Phoenix, and the third discussing problems with crime eight years earlier near a light rail station in a different part of Phoenix. Although Gonzales stated in her eighth supplemental disclosure statement that Dominick looked up crime statistics to confirm the data reported in the

---

[3] Dominick did not claim that he relied on Gonzales's deposition testimony that she experienced increased crime at the Property to form his opinion.

third article, nothing in his report or his deposition testimony in the record indicates that he based his valuation opinion on this information. Instead, he generalized from anecdotes and comments featured in the articles to speculate that "time will tell" if the light rail station adjacent to the Property would attract vagrants and increase crime, conceding that the extent of any impact is "difficult to assess at this point."

**¶18**         Dominick's opinion that the Property's value is diminished by increased crime is a matter of conjecture not supported by sufficient facts or data. Accordingly, the superior court did not abuse its discretion by precluding his testimony regarding this measure of severance damages. *Filler*, 168 Ariz. at 153; *Rickles*, 109 Ariz. at 85; *Arizona Water Co.*, 7 Ariz. App. at 58.[4]

> **B.      The Superior Court Did Not Abuse Its Discretion by Precluding Dominick's Opinions Regarding Gonzales's Inability to Sell the Property During Construction.**

**¶19**         Gonzales next challenges the superior court's ruling excluding Dominick's opinion that she suffered severance damages from the delayed completion of the Project.

**¶20**         Dominick opined that construction delays "could" have a substantial present influence on the Property's market value because—in his opinion—it was effectively unsellable during the Project.[5] He wrote that a potential purchaser at the time of the taking "conceivably" would pay less for the Property because of the ongoing construction, which placed a "cloud

---

[4] Because we affirm the superior court's ruling under Rule 702, we need not consider its alternative rulings that security costs are non-compensable because they are business losses or resulted from the City's exercise of its police power.

[5] Dominick based his opinion, in part, on allegations that City contractors trespassed on the Property and intermittently closed the only legal ingress/egress for the Property. Those allegations were the subject of Gonzales and El Tacazo's 2022 trespass and inverse condemnation case, and cannot support severance damages in this case. *See Dixon v. City of Phoenix*, 173 Ariz. 612, 620 (App. 1992) (stating a "condemnation proceeding is limited to compensating the landowner for the taking and does not include damages which are not directly related to a diminution in the fair market value of the property such as may result from a tortious trespass") (internal citation omitted).

upon the [P]roperty that may reduce its appeal to prospective buyers, potentially lowering the [P]roperty's market value . . . ." He calculated that this harm decreased the value of the Property by $428,293.

¶21      The superior court excluded Dominick's opinion on the grounds that it was too speculative and he had not provided sufficient facts or data to support his damage calculation. Again, we find no abuse of discretion.

¶22      Arizona law allows a property owner to present evidence that a construction delay diminished the value of a remainder parcel at the time of a taking. *Filler*, 168 Ariz. at 152–53 (holding trier of fact may consider effect of construction delay in determining severance damages); *see also Wells Fargo Bank of Ariz., N.A.*, 194 Ariz. at 130, ¶¶ 19–22, (trial court did not abuse its discretion by allowing expert testimony that uncertainty about the freeway's completion date and location at the time of the taking affected the market value of remainder parcels). If offered through an expert, that opinion evidence must be admissible under Rule 702.

¶23      Dominick's opinion that Gonzales was effectively prevented from selling the Property during the Project is unsupported by any facts or data. He merely speculates that it was "conceivabl[e]" that if Gonzales had tried to sell the Property during the Project, the construction "may" have "potentially" lowered its market value. This hypothesis is unsupported by any facts, as the Property was never listed for sale, and Dominick does not cite any comparable marketing attempts or sales data showing that property prices in the area decreased during the Project.

¶24      Gonzales insists that Dominick's opinion was sufficiently definitive because the qualifying language he used paralleled the language the Arizona Supreme Court used in *Filler*, 168 Ariz. at 151, when it discussed whether damages from a construction delay may be compensable severance damages. But the court in *Filler* was stating what the evidence *could* show, *id.*; whereas Dominick was purporting to opine on what the evidence *did* show. He needed to do more than assert what damages Gonzales "could," or "conceivably" have suffered. *See* Ariz. R. Evid. 702(b).

¶25      The superior court did not abuse its discretion by precluding this evidence.

## CONCLUSION

¶26         For the foregoing reasons, we affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:        JR