IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————————

**STATE OF ARIZONA, ET AL.,**
*Plaintiffs/Appellants,*

*v.*

**FOOTHILLS RESERVE MASTER OWNERS ASSOCIATION, INC.,**
*Defendant/Appellee.*

———————————

**DIETMAR HANKE, ET AL.,**
*Intervenors/Appellees.*

———————————

No. CV-23-0292-PR
**January 28, 2025**

———————————

Appeal from the Superior Court in Maricopa County
The Honorable Timothy J. Thomason, Judge (Retired)
No. CV2017-010359

**AFFIRMED**

———————————

Opinion of the Court of Appeals,
Division One
256 Ariz. 422 (App. 2023)

**VACATED**

———————————

COUNSEL:

Kristin K. Mayes, Arizona Attorney General, Hayleigh S. Crawford (argued), Clinten N. Garrett, Michelle Burton, Joe Acosta, Jr., Assistant

Attorneys General, Phoenix, Attorneys for State of Arizona, et al.

Dale S. Zeitlin (argued), Casandra C. Zeitlin, Zeitlin & Zeitlin, P.C., Phoenix, Attorneys for Foothills Reserve Master Owners Association, Inc.

Timothy Sandefur, Scharf-Norton Center for Constitutional Litigation at the Goldwater Institute, Phoenix, Attorneys for Amicus Curiae Goldwater Institute

CHIEF JUSTICE TIMMER authored the Opinion of the Court, in which VICE CHIEF JUSTICE LOPEZ, JUSTICES BOLICK, BEENE, MONTGOMERY, KING, and PELANDER (Retired)[*] joined.

CHIEF JUSTICE TIMMER, Opinion of the Court:

¶1 The Arizona Constitution requires that property owners receive "just compensation" before private property is "taken or damaged for public or private use." *See* Ariz. Const. art. 2, § 17. Just compensation includes "severance damages," which are available when "the property sought to be condemned constitutes only a part of a larger parcel" and the remaining portion of that parcel sustains damages "by reason of its severance from the portion sought to be condemned, and the construction of the improvement" on the condemned portion. *See* A.R.S. § 12-1122(A)(2).

¶2 The issue here is whether severance damages are available to landowners when their appurtenant easements are condemned but their physical real property is not taken. We conclude that § 12-1122(A)(2) authorizes severance damages in these circumstances.

---

[*] Before his retirement from this Court, Justice Robert M. Brutinel (Retired) was recused from this matter. Pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (Retired) of the Arizona Supreme Court was designated to sit in this matter.

**BACKGROUND**

¶3          Foothills Reserve Community, a master-planned community, was created in the early 2000s and now consists of 590 single-family homes, recreational areas, and open spaces.   Although located in Phoenix, the community was initially isolated from the city's general bustle due to its location between South Mountain Park to the north, two undeveloped desert parcels to the east and west, and the Gila River Indian Community reservation to the south.   The Foothills Reserve Master Owners Association (the "HOA") owned the two desert parcels and maintained them as common areas (the "Common Areas") for all homeowners to enjoy.

¶4          The homeowners had both positive and negative easements in the Common Areas.   The Declaration of Covenants, Conditions, Restrictions and Easements for the community granted each homeowner a non-exclusive positive easement to enter and use the Common Areas for enjoyment.   The dedicated plat for the community granted homeowners a negative easement in the Common Areas by restricting the property's use to undevelopable open space.[1]   The easements passed with the titles to the homeowners' properties and were therefore "appurtenant" to those properties.   *See Solana Land Co. v. Murphey*, 69 Ariz. 117, 122 (1949); Restatement (Third) § 4.5(1) (explaining what qualifies as an "appurtenant easement").

¶5          Phoenix's growth eventually encroached on Foothills Reserve Community's relative seclusion.   In 2017, the State sued to condemn the Common Areas and the homeowners' easements to construct the Loop 202 South Mountain Freeway.   *See* A.R.S. §§ 12-1113(1), -1114(6).   In 2018, the State and the HOA stipulated to a judgment condemning the Common Areas and compensating the HOA $6.5 million.   *See* A.R.S. § 12-1122(A)(1) (describing damages for loss of condemned property).   The parties continued to litigate issues concerning the compensation due the homeowners for loss of their easements.

¶6          The HOA, representing 589 homeowners (the "Homeowners"), sought both the value of the easements themselves *and* damages for the reduction in home values due to the new freeway's

---

[1]   Negative easements are also known as "restrictive covenants."   *See* Restatement (Third) of Prop.: Servitudes § 1.2 cmt. h (Am. L. Inst. 2000).

proximity.[2]  *See Catalina Foothills Unified Sch. Dist. No. 16 v. La Paloma Prop. Owners Ass'n, Inc.*, 238 Ariz. 510, 517–18 ¶¶ 28–30 (App. 2015) (concluding that a homeowners' association was authorized to represent all owners in a condemnation action concerning common areas in which the owners had easement rights).   The State agreed that the Homeowners should be compensated for loss of the easements, measured by the difference between the values of the Homeowners' properties with and without the easements. *See* § 12-1122(A)(1).   The State disputed that the Homeowners were entitled to additional compensation for any loss in home value caused by the homes' proximity to the new freeway, i.e., "proximity damages."   *See* § 12-1122(A)(2).

¶7        Both parties moved for partial summary judgment.   In 2022, the superior court ruled in favor of the HOA, permitting it to continue pursuing the proximity damages claim.   Thereafter, the parties stipulated to a final judgment that preserved the State's right to appeal that ruling. Specifically, the HOA, on behalf of the Homeowners, was granted judgment for $18 million, plus interest and costs.   Six million dollars—the difference in the homes' value with the easements and without them—was awarded pursuant to § 12-1122(A)(1) and was payable immediately regardless of the outcome of the State's appeal.   The State is obligated to pay the remaining $12 million as proximity damages pursuant to § 12-1122(A)(2) only if the HOA ultimately prevails.

¶8        The court of appeals reversed and remanded with instructions for the superior court to enter a new judgment excising the $12 million in proximity damages.   *State v. Foothills Rsrv. Master Owners Ass'n, Inc.*, 256 Ariz. 476, 480 ¶ 25 (App. 2023).   It reasoned that the Homeowners were not entitled to proximity damages under § 12-1122(A)(2) because such damages are available only when the condemned property is a physical parcel of land.   *See id.* at 480 ¶ 23.

¶9        We granted the HOA's petition for review to decide whether § 12-1122(A)(2) requires compensation for proximity damages after

---

[2]  The Declaration of Covenants, Conditions, Restrictions and Easements appointed the HOA to represent homeowners in any condemnation action. Regardless, a couple owning one home chose to separately litigate claims against the State.   *See State v. Foothills Rsrv. Master Owners Ass'n, Inc.*, No. 1 CA-CV 22-0216, 2023 WL 2379010 (Ariz. App. Mar. 7, 2023) (mem. decision).

condemnation of an appurtenant easement, a potentially recurring issue of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶10 We review the superior court's grant of partial summary judgment for the HOA de novo. *Glazer v. State*, 237 Ariz. 160, 167 ¶ 29 (2015). Partial summary judgment was appropriate if the material facts were not genuinely disputed, and the HOA was entitled to judgment as a matter of law. *See* Ariz. R. Civ. P. 56(a). Further, we review matters of statutory interpretation de novo because they present purely legal issues. *See State v. Jones*, 246 Ariz. 452, 454 ¶ 5 (2019).

**A.     Property Owners Are Entitled To Compensation For The Value Of Their Condemned Property And Any Severance Damages.**

¶11 The Arizona Constitution provides that "[n]o private property shall be taken or damaged for public or private use without just compensation having first been made." Ariz. Const. art. 2, § 17. A property owner is justly compensated when paid "the amount of money necessary to put the property owner in as good a financial position as if the property had not been taken." *City of Phoenix v. Wilson*, 200 Ariz. 2, 5 ¶ 8 (2001).

¶12 Section 12-1122 provides two elements of damages when property is condemned:

A. The court or jury shall ascertain and assess:

1. The value of the property sought to be condemned and all improvements on the property pertaining to the realty, and of each and every separate estate or interest in the property, and if it consists of different parcels, the value of each parcel and each estate or interest in the parcel separately.

2. *If the property sought to be condemned constitutes only a part of a larger parcel*, the damages that will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff.

3. How much the portion not sought to be condemned and each estate or interest in the portion will be benefited separately, if at all, by construction of the improvement proposed by the plaintiff. If the benefit is equal to the damages assessed under paragraph 2 of this subsection, the owner of the parcel shall be allowed no compensation except for the value of the portion taken, but if the benefit is less than the damages so assessed, the benefit shall be deducted from the damages, and the remainder shall be the only damages allowed in addition to the value.

(Emphasis added.) The damages described in (A)(1), which are not at issue here, are called "valuation damages" and compensate an owner for "the value of the property actually taken by condemnation." *See Ariz. State Land Dep't v. State ex rel. Herman*, 113 Ariz. 125, 128 (1976). "Severance damages," at issue here and described in subsection (A)(2), are calculated after deducting any benefits from the newly constructed improvement per subsection (A)(3). *See State ex rel. Miller v. Wells Fargo Bank of Ariz., N.A.*, 194 Ariz. 126, 128–29 ¶ 10 (App. 1998). "Severance damages compensate an owner whose property has been taken for any reduction in the fair market value of remaining property not taken." *Catalina Foothills*, 238 Ariz. at 516 ¶ 21 (citing *Pima County v. De Concini*, 79 Ariz. 154, 157–58 (1955)); *see Herman*, 113 Ariz. at 128.

**¶13** One type of severance damage, proximity damages, occurs when the remaining property is in close proximity to a newly built improvement on the condemned property, like the freeway here. *See Wells Fargo Bank*, 194 Ariz. at 129 ¶ 10. But not every property owner damaged by the property's nearness to a freeway is entitled to proximity damages under § 12-1122(A)(2). *See id.* ¶ 14 (recognizing that although traffic noise adversely affects all property owners in a neighborhood, not every owner is due compensation (citing *State ex rel. Miller v. J.R. Norton Co.*, 158 Ariz. 50, 52 (App. 1988))). Only an owner whose property is severed by condemnation is entitled to proximity damages. *See id.* at 129–30 ¶¶ 14–17; *see also Ariz. Hercules Copper Co. v. Protestant Episcopal Church Corp. of Ariz.*, 21 Ariz. 470, 477 (1920) (observing that "[w]here there is an actual taking . . . the almost universal rule is that the landowner is entitled to incidental damages to the land not taken").

¶14        The issue here is whether proximity damages are available under § 12-1122(A)(2) when the condemned property is an appurtenant easement rather than land. Our resolution turns on whether "the property sought to be condemned"—the appurtenant easements—was "part of a larger parcel" owned by the Homeowners. *See* § 12-1122(A)(2). If so, § 12-1122(A)(2) applies and the HOA prevails. If not, § 12-1122(A)(2) does not apply and the State prevails.

¶15        The HOA asserts that before the condemnation, the Homeowners' properties included the appurtenant easements which, together with the land and the houses, constituted "parcels" under § 12-1122(A)(2). Because the State condemned the easements, they were "part of a larger parcel," and the remaining portions of the parcels were damaged by their proximity to the freeway, the HOA argues that § 12-1122(A)(2) requires payment of proximity damages. The State counters we should adopt the court of appeals' contrary interpretation, which limited application of § 12-1122(A)(2) to condemnation of parcels of land. And because the easements were not "land," the State argues § 12-1122(A)(2) is inapplicable, meaning the Homeowners cannot qualify for proximity damages.

**B.    A.R.S. § 12-1122(A)(2) Can Apply To Require Payment Of Proximity Damages Resulting From The Condemnation Of An Appurtenant Easement.**

    1.    <u>Nonpossessory interests in land can form "part of a larger parcel" of land.</u>

¶16        To determine whether § 12-1122(A)(2) applies only when the condemned property is land, we start with the statutory language. *See Silverman v. Ariz. Dep't of Econ. Sec.*, 257 Ariz. 357, 361 ¶ 12 (2024). "If that language is plain and unambiguous when read in context, we apply it without further analysis." *Id.* If there is more than one reasonable meaning, the statute is ambiguous and we resolve that ambiguity by applying secondary interpretive principles, including examining "the statute's subject matter and purpose, and the effects and consequences of alternate interpretations." *Id.*

¶17        Section 12-1122 is included within A.R.S. title 12, chapter 8, article 2, which is titled "Eminent Domain." *See* A.R.S. §§ 12-1111 to -1130. Nothing in that article defines "property," "parcel," or "larger parcel."

Thus, we interpret those terms "according to the[ir] common and approved use," unless they are "[t]echnical words" that "have acquired a peculiar and appropriate meaning in the law." A.R.S. § 1-213.

### a. The meaning of "property"

**¶18** Neither party disputes that "property" subject to condemnation in Arizona includes nonpossessory interests in land, like easements, and we agree. *See* §§ 12-1113(1), -1114(6); *see also State ex rel. Morrison v. Thelberg*, 87 Ariz. 318, 324 (1960) (describing a positive easement as "a property right"); *S. Cal. Edison Co. v. Bourgerie*, 507 P.2d 964, 965–66 (Cal. 1973) (noting that a majority of jurisdictions hold that negative easements "constitute property rights for purposes of eminent domain"); 73 C.J.S. *Property* § 6 (2024) (describing easements and hereditaments as "property"). Notably, for purposes of "Eminent Domain for Public Works," *see* A.R.S. title 12, chapter 8, article 3, "real property" and "property" are explicitly defined as including "all easements and hereditaments" and "every estate, interest and right, legal or equitable, in lands."[3] *See* § 12-1141(6); *see also State ex rel. Larson v. Farley*, 106 Ariz. 119, 122 (1970) (stating that related statutes "must be construed as one system governed by one spirit and policy").

**¶19** The court of appeals applied a different definition for "property sought to be condemned" as used in § 12-1122(A)(2). *See Foothills Rsrv. Master Owners Ass'n*, 256 Ariz. at 479 ¶ 21. The court interpreted the term there as referring only to "land" and excluding nonpossessory interests like easements. *See id.* It grounded its analysis on the interpretive canon *expressio unius est exclusio alterius* (the "negative-implication canon"), which provides that "[t]he expression of one thing implies the exclusion of others." *See id.* ¶ 19 (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012)). According to the court, by using the words, "part of a larger parcel," § 12-1122(A)(2) implies that the "property sought to be

---

[3] Neither party addresses whether the condemnation action here was for a "public works project." *See* A.R.S. § 12-1141(5) (defining "public works project" as "a work or undertaking which is financed in whole or in part by a federal agency . . . or by a state public body, as defined by [article 3]"). If so, article 3 would apply to supplement the eminent domain laws in article 2. *See* A.R.S. § 12-1162.

condemned" must be a "smaller parcel." *See id.* The court then relied on dictionary definitions and eminent domain statutes referring to "parcels of land" to conclude that "parcel" in § 12-1122(A)(2) means a parcel of land. *See id.* ¶¶ 19–20. The court ultimately concluded that because easements are not parcels of land, they cannot be "part of a larger parcel," and § 12-1122(A)(2) therefore does not authorize proximity damages for the Homeowners. *See id.* ¶ 21.

**¶20** We disagree with the court of appeals that "part of a larger parcel" limits "the property sought to be condemned" to a parcel of land. *See id.* ¶¶ 19–21. In our view, that court arrived at this conclusion by incorrectly applying the negative-implication canon. The "one thing" expressed in § 12-1122(A)(2) is "property sought to be condemned [that] constitutes only a part of a larger parcel." Assuming the canon applies here, it only excludes "property sought to be condemned" that is *not* "part of a larger parcel." *See City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, 211 ¶ 13 (2019) (stating that the negative-implication canon "is appropriate when one term is reasonably understood as an expression of all terms included in the statutory grant or prohibition"). This exclusion does not suggest that "the property sought to be condemned" is necessarily a "smaller parcel."

**¶21** Instead, if the legislature had intended this meaning, we would expect § 12-1122(A)(2) to apply to "the *parcel* sought to be condemned." *Cf. HCZ Constr., Inc. v. First Franklin Fin. Corp.*, 199 Ariz. 361, 365 ¶ 15 (App. 2001) ("When the Legislature has used both 'may' and 'shall' in the same paragraph of a statute, we infer that the Legislature acknowledged the difference and intended each word to carry its ordinary meaning."). By misapplying the negative-implication canon, the court of appeals mistakenly changed the meaning of "property sought to be condemned," which can include easements and other nonpossessory property rights.

**¶22** The real dispute here is whether condemned easements and other nonpossessory property interests can be "part of a larger parcel" under § 12-1122(A)(2). Resolving this dispute depends on the meaning of "parcel" and "larger parcel."

### b. The meaning of "parcel"

**¶23** We agree with the HOA that nonpossessory property interests, like easements, may form part of a "parcel." First, the ordinary meaning of "parcel" supports this conclusion. *See Barriga v. Ariz. Dep't of Econ. Sec.*, 256 Ariz. 543, 547 ¶ 13 (2024) (stating that to interpret statutes "we look first to the text itself, applying common and ordinary meanings"). "Parcel," as it relates to real property, means "[a] tract of land." *Parcel*, Black's Law Dictionary (12th ed. 2024); *see Silverman*, 257 Ariz. at 362 ¶ 14 (explaining that dictionary definitions ascribe ordinary meaning to terms). "Land," in turn, is defined, in relevant part, as both "[a]n immovable and indestructible three-dimensional area consisting of a portion of the earth's surface," *and* "[a]n estate or interest in real property." *Land*, Black's Law Dictionary (12th ed. 2024). Putting these definitions together, the term "parcel" broadly includes all estates and interests in property, including nonpossessory interests, like easements.

**¶24** Second, interpreting "parcel" as including nonpossessory interests aligns with the statutes governing eminent domain for public works, which supplement the statutes generally governing eminent domain. *See* § 12-1162. Section 12-1141(6) defines "land" as including "all easements and hereditaments" and "every estate, interest and right, legal or equitable" in land. Ascribing a similar meaning to the land comprising a "parcel" in § 12-1122(A)(2) makes the eminent domain statutes consistent and a workable whole. *See Farley*, 106 Ariz. at 122; *cf. Escamilla v. Cuello*, 230 Ariz. 202, 205 ¶ 16 (2012) (adopting a statutory interpretation that is "most plausible and harmonious").

**¶25** Third, interpreting "parcel" in § 12-1122(A)(2) as including nonpossessory interests is consistent with how the term is used in § 12-1122(A)(1). *Cf. Escamilla*, 230 Ariz. at 205 ¶ 16. Subsection (A)(1), which directs compensation for the value of condemned property, recognizes that a parcel may have compensable component estates or interests. § 12-1122(A)(1) (providing that the factfinder must ascertain and assess the value of the condemned property and "each and every separate estate or interest in the property" and if separate parcels are condemned "the value of each parcel and each estate or interest in the parcel separately"). Thus, subsection (A)(1) recognizes that parcels may have distinct estates and interests, which necessarily include nonpossessory interests, and that each must be ascertained and valued as compensation for the condemnee. Indeed, the HOA, on behalf of the Homeowners, was

compensated for the value of the condemned easements here under subsection (A)(1).

¶26        The State argues that because subsection (A)(1) directs valuation of "property," "parcel[s]," *and* each "estate or interest" in property or parcels, the legislature intended "estate or interest" as something different from "property" or "parcel." *See Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2018) (disapproving interpretations that render language superfluous).   The State further asserts that, by not referring to "estate or interest" in subsection (A)(2), the legislature intended to exclude "estate or interest" from eligibility for severance damages.   *See AZ Petition Partners LLC v. Thompson*, 255 Ariz. 254, 260 ¶ 29 (2023) ("[W]hen the legislature uses certain language in one part of the statue and different language in another, the court assumes different meanings were intended." (alteration in original) (quoting *DePierre v. United States*, 564 U.S. 70, 83 (2011))).

¶27        We are not persuaded that subsection (A)(1) evidences a legislative intent to exclude "estate or interest" in property from eligibility for severance damages under subsection (A)(2).   Subsection (A)(1)'s stated purpose in naming "estate or interest" is not to cull the terms from the meanings of "property" and "parcel."   Instead, it is to direct a separate ascertainment and assessment of value for component parts of "property" and "parcel."   As next explained, *see* Part (B)(1)(b) ¶ 28, a similar separate assessment is made in calculating any benefits that offset severance damages.   *See* § 12-1122(A)(3).   These separate calculations are needed to carry out § 12-1122(B)'s directive to apportion damages between "each source of damage separately."   Also, removing "estate or interest" from the meaning of "parcel" in subsection (A)(2) would eliminate both possessory and nonpossessory estates and interests, meaning no condemnee would be eligible for severance damages.   *See* Restatement (First) of Prop. §§ 5, 9 (Am. L. Inst. 1936) (defining interest and estate).   We avoid interpretations that render provisions meaningless.   *See Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, 416 ¶ 30 (2023).   In context, therefore, subsection (A)(1)'s reference to "estate or interest" does not evidence a legislative intent to exclude estates and interests from the meaning of "property" and "parcel" in subsection (A)(2).

¶28        Fourth, our interpretation of "parcel" as including nonpossessory interests best aligns with the damages/benefits calculation required by § 12-1122(A)(3) to determine severance damages.   *See Farley,*

106 Ariz. at 122.   In calculating the benefit from an improvement constructed on condemned property to the remaining "portion" of the "larger parcel," subsection (A)(3) requires a separate calculation concerning "each estate or interest" in that portion.   The sum is then subtracted from the damages calculated under subsection (A)(2) to determine whether "the owner of the parcel" is owed severance damages.   § 12-1122(A)(3).   By interpreting "parcel" in subsection (A)(2) as including nonpossessory interests, the damages and benefits to the same type of property interests are considered in tallying severance damages—an apples-to-apples calculation.   Excluding nonpossessory interests from the meaning of "parcel" in subsection (A)(2) would mean that damages and benefits to different types of property interests would be considered in tallying severance damages—an apples-to-oranges calculation.   *See Escamilla*, 230 Ariz. at 205 ¶ 16.

¶29        Fifth, and importantly, interpreting "parcel" as including nonpossessory interests comports with the constitution's directive to compensate persons for "damages" sustained as a consequence of condemnation.   *See* Ariz. Const. art. 2, § 17; *see also Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 272 (1994) ("[T]his court construes statutes to avoid rendering them unconstitutional.").   Absent defining "parcel" as we do, owners of condemned nonpossessory interests would be unable to collect severance damages incurred and thus would not be placed in "as good a financial position as if the property had not been taken."   *See Wilson*, 200 Ariz. at 5 ¶ 8.

¶30        In sum, "parcel," as used in § 12-1122(A)(2), means a continuous tract or plot of real property together with all estates and interests in that property.   The estates and interests can be nonpossessory.

### c.   The meaning of "larger parcel"

¶31        "Larger parcel," as used in § 12-1122(A)(2), has both an ordinary and a technical meaning, depending on whether the condemned property is part of a single parcel of land or consolidated for a common purpose with other parcels owned by the condemnee.

¶32        We identify the ordinary meaning of "larger parcel" by examining its statutory context and using logic.   Section 12-1122(A)(2) contemplates a "larger parcel" comprised of two parts: "the property sought to be condemned" and "the portion not sought to be condemned."

12

When the condemned property is part of a single parcel of land, the "larger parcel" is easily identified as the condemned portion plus the remaining portion. *See Wilson*, 200 Ariz. at 8–9 ¶¶ 17–19 (concluding that when the government condemned 1.4 acres at the corner of a 5-acre parcel, the 5-acre parcel was the "larger parcel" under § 12-1122(A)(2)); 4A Julius L. Sackman, *Nichols on Eminent Domain* ("Nichols") § 14.01 (3d ed. 2024) (stating that a property owner retains a portion of a "larger parcel" when the condemned interest is part of a single, distinct parcel of land).

**¶33**        The term "larger parcel" also has a technical meaning when the condemned property is sufficiently related to the owner's interests in another, distinct parcel of property. *See* § 1-213. Generally, when property is condemned, the condemnee is not entitled to severance damages for injury to the condemnee's interests in separate parcels of land. *See* Nichols § 14B.02.

**¶34**        This Court, however, has adopted the "more equitable" exception to this general rule. *State ex rel. LaPrade v. Carrow*, 57 Ariz. 429, 433 (1941). Under it, a "larger parcel" exists for purposes of severance damages when the property sought to be condemned is held and used for a common purpose with the condemnee's property interests in separate, distinct parcels of land. *See id.*; *Herman*, 113 Ariz. at 128. The property interests can form a "larger parcel" "even though [the owner's] title thereto varies both in quality and quantity" and the parcels are noncontiguous. *Carrow*, 57 Ariz. at 431, 432–33 (concluding a "larger parcel" existed where the condemnee used for a cattle range noncontiguous parcels of land they owned, leased, and held under a government permit). To determine whether the property interests are sufficiently intertwined, a court examines "the unities of use, ownership and contiguity." *See Herman*, 113 Ariz. at 128; Nichols § 14B.02; *see also State ex rel. Morrison v. Jay Six Cattle Co.*, 88 Ariz. 97, 107 (1960) ("All of the [separate parcels of] land owned by [the condemnees were] contiguous and thus can properly be considered as a 'larger parcel,' only part of which is sought to be condemned, within the meaning of A.R.S. § 12-1122[(A)(2)]."); *State v. City of Mountain Home*, 493 P.2d 387, 391 (Idaho 1972) (interpreting a statute identical to § 12-1122(A)(2) and construing "parcel" as meaning "a consolidated body of land" that may be comprised of multiple pieces of land); *cf. Maricopa County v. Paysnoe*, 83 Ariz. 236, 238–39 (1957) (rejecting the county's argument that two contiguous lots owned by the same condemnee but used differently must nevertheless be valued as a single parcel for purposes of calculating severance damages inflicted on each lot).

¶35        In sum, when determining whether property condemned is part of a "larger parcel," a court must undertake a two-part inquiry. The court must initially ask if the property condemned constitutes a portion of a single parcel. If the answer is "yes," the inquiry ends, and the court should decide whether the condemnation or any improvements built on the condemned property injured the remaining portion of the parcel of land. If so, the condemnee is entitled to severance damages.

¶36        If the answer to the initial inquiry is "no," the court must ask if the condemned property nevertheless forms part of a "larger parcel" with a separate, distinct parcel owned by the condemnee. The court should examine "the unities of use, ownership and contiguity" to make that determination. *See Herman*, 113 Ariz. at 128; Nichols § 14B.02. If the court determines that the condemned property is not part of a "larger parcel," the inquiry ends, and the condemnee is not entitled to severance damages. If the court determines that the condemned property forms part of a "larger parcel," the court should then decide whether the condemnation or any improvements built on the condemned property injured the remaining portion. If so, the condemnee is entitled to severance damages.

### 2.      Appurtenant easements are part of the dominant estate.

¶37        Easements can be "in gross" or "appurtenant." *See Solana Land*, 69 Ariz. at 122. An easement in gross is a personal privilege that grants the holder the right to use someone else's land for a limited purpose but is not attached to any land owned by the easement holder. *See id.*; *Ammer v. Ariz. Water Co.*, 169 Ariz. 205, 209 (App. 1991); 25 Am. Jur. 2d *Easements and Licenses* § 1 (2025). As such, an easement in gross dies with the easement holder. *See Solana Land*, 69 Ariz. at 122. Thus, a condemned easement in gross is neither attached to land nor "part of a larger parcel," and the condemnee of an easement in gross is not entitled to severance damages under § 12-1122(A)(2).

¶38        The Homeowners' easements were not "in gross" but were instead "appurtenant easements." An "appurtenant easement" involves two parcels of land: a "servient estate," which is burdened by the easement (here, the Common Areas); and a "dominant estate," which benefits from the easement (here, the Homeowners' properties). *See id.* at 122; *Ammer*, 169 Ariz. at 209. Appurtenant easements are created to benefit the dominant estate owners' use of their land. *See Solana Land*, 69 Ariz. at 122;

14

*Ammer*, 169 Ariz. at 209. As such, the easements here "ran with the land," meaning homeowners acquired and lost easement rights, respectively, upon obtaining and transferring ownership of their homes. *See Solana Land*, 69 Ariz. at 122 (describing an appurtenant easement as "pass[ing] with the land").

**¶39** "The dominant estate and the easement together constitute one entity." 4 Nichols § 12B.02; *see also United States v. Welch*, 217 U.S. 333, 339 (1910) (describing an easement extinguished by condemnation as "attached" to the dominant estate). Arizona courts have not addressed this principle in eminent domain cases but have done so in the property tax context. *See Recreation Ctrs. of Sun City, Inc. v. Maricopa County*, 162 Ariz. 281, 287 (1989) (noting that a dominant estate must be valued as including how its use is enhanced by the easement); *Ariz. R.C.I.A. Lands, Inc. v. Ainsworth*, 21 Ariz. App. 38, 41 (1973) (stating that the dominant estate increases in taxable value due to the easement).

**¶40** *Ainsworth* is particularly instructive. There, Arizona R.C.I.A. Lands ("R.C.I.A.") bought real property sold by the county treasurer for delinquent taxes. 21 Ariz. App. at 39. Ainsworth, an adjoining property owner, had an appurtenant easement for ingress and egress over that property, which by law was not extinguished by the tax sale. *See id.* R.C.I.A. unsuccessfully sued to compel Ainsworth to either redeem R.C.I.A.'s fee simple interest in the property or relinquish the easement. *See id.* The court of appeals concluded that R.C.I.A. acquired the land at the tax sale subject to Ainsworth's easement, and Ainsworth did not have to redeem the property to preserve that easement. *See id.* In stating why property sold at a tax sale is subject to any easements thereon, the court explained that "when an easement is appurtenant to a dominant estate it attaches to that estate, being carved out of the servient estate . . . the value of the dominant estate is increased by the existence of the easement and in effect thus includes the value of the easement." *Id.* at 40 (quoting *Engel v. Catucci*, 197 F.2d 597, 599 (D.C. Cir. 1952)).

**¶41** The court also rejected R.C.I.A.'s argument that the law preserving Ainsworth's easement was an unconstitutional taking. *See id.* at 40–41. The court reasoned that "plaintiff never acquired any interest which [Arizona law] could take from it" because R.C.I.A. never possessed a fee simple interest in the land absent the easement's burden. *See id.* at 41 (maintaining that the state could only tax "the fee minus the easement which had ceased to be a part of the servient estate" so that is all the state

could acquire and sell (quoting *Alvin v. Johnson*, 63 N.W.2d 22, 26 (Minn. 1954))).

¶42     We see no reason to consider an appurtenant easement as part of the dominant estate for purposes of property tax but not eminent domain.   Indeed, the fact that an appurtenant easement adds value to the dominant estate for tax purposes logically supports the conclusion that the dominant estate and appurtenant easement must be considered a unified entity that is subject to injury when one part is severed from the other.   We therefore conclude that an appurtenant easement is part of the dominant estate.

3.     The easements here were severed from a "larger parcel."

¶43     Because the State condemned the Homeowners' easements, and they were part of the dominant estate, they were necessarily "part of a larger parcel."   Consequently, the Homeowners are entitled to severance damages under § 12-1122(A)(2) for any damages inflicted on the portion of the "larger parcel" remaining.

¶44     Although we were unable to find many cases addressing severance damages when a government only condemns parties' easements and not their physical property, a few courts have made similar decisions. In *Welch*, 217 U.S. at 338, the federal government condemned three acres of land and permanently flooded it, cutting off, and therefore taking, the plaintiffs' access easement to a county road.   The trial court awarded plaintiffs severance damages by compensating them for their property's lessened value due to loss of the easement, and the Supreme Court affirmed.   *See id.* at 338–39; *see also Childers v. United States*, 116 Fed. Cl. 486, 532 (Fed. Cl. 2013) (characterizing the damages in *Welch* as "severance damages").   Notably, the Court recognized that the easement was part of plaintiffs' land and that damage to the remaining land was compensable. *See Welch*, 217 U.S. at 338–39 (finding that plaintiffs were properly compensated for "damage . . . to the tract of which a part is taken").

¶45     In *Hughes v. State*, 328 P.2d 397 (Idaho 1958), the Idaho Supreme Court addressed the same issue we confront.   The Hugheses owned business property on the corner of an intersection with access to each intersecting street.   *See id.* at 398.   The state significantly raised the elevation of one street, making the intersection impassable for vehicles and allegedly compelling the local government to "close[] and vacate[]" the

intersection. *See id.* The state did not "take" any physical property. *See id.* Nevertheless, the Hugheses sued the state under an inverse condemnation theory, alleging that one right of access was lost and "their property was rendered unfit for business purposes." *See id.* As relevant here, the trial court dismissed the Hugheses' claims for damages due to the elimination of their ability to access their property from the raised street. *See id.*

¶46        The Idaho Supreme Court reversed. *See id.* at 402. In doing so, and after assuming that the access easement had been destroyed, the court addressed whether the Hugheses were eligible for severance damages pursuant to an Idaho statute that was nearly identical to § 12-1122(A)(2). *Id.* at 400, 402. Significantly, the court concluded that "[because] such right of access constitutes an interest in, by virtue of being an easement appurtenant to, a larger parcel, the [factfinder] must ascertain and assess the damages which will accrue to the portion not sought to be condemned by reason of the severance of the portion — the right of access — sought to be condemned, and the construction of the improvement." *Id.* at 402 (emphasis removed).

¶47        In *Glessner v. Duval County*, 203 So.2d 330 (Fla. Dist. Ct. App. 1967), the Florida Court of Appeals reversed a judgment denying the Glessners' claim for severance damages after the county condemned part of their easement over an adjoining property. The Glessners had purchased land and a truck body manufacturing business from the adjoining property owner and were granted an access easement over that owner's property. *See id.* at 331–32. The *county* condemned a strip of property owned by the adjoining property owner along with part of the Glessners' easement for a street-widening project. *See id.* at 331. As with the Homeowners here, none of the Glessners' physical property was taken. *See id.* Nevertheless, the court applied a statute similar to § 12-1122(A)(2) and concluded that the Glessners were entitled to seek severance damages for the injury to their physical property as the "untaken portion where less than the entire property is sought to be appropriated." *See id.* at 334–35.

¶48        The State argues that cases like *Welch*, *Hughes*, and *Glessner* are distinguishable because they involve public improvements that impair ingress and egress to a property. But the State does not offer any reason to treat condemnation of ingress/egress easements differently from other types of easements. Its real complaint seems grounded on its contention that the Homeowners have not suffered any proximity damages that

anyone living near a freeway would not suffer and therefore should not be singled out for compensation. We are unpersuaded. The Homeowners purchased their properties with a negative easement that prevented construction of any improvements—including a freeway—on the Common Areas. Those easements were condemned, and the buffer that was their valuable property right was eliminated, making them unlike others living near a freeway. We see no statutory basis for precluding recovery of the severance damages authorized by § 12-1122(A)(2) for condemned easements unrelated to ingress and egress.

¶49   No party disputes that the Homeowners each own single parcels of land. The State condemned easements that were appurtenant to those parcels. Thus, we need not engage in the "unity of interests" analysis required when distinct parcels are not involved. *See Herman*, 113 Ariz. at 128; Nichols § 14B.02. Because the State condemned the Homeowners' easements and those easements were part of a larger parcel that included the Homeowners' physical real property, § 12-1122(A)(2) authorized payment of severance damages for any injury to the Homeowners' remaining property as a consequence of the freeway's proximity. Those damages would comprise the reduction in the Homeowners' property values due to their proximity to the freeway. *See Catalina Foothills*, 238 Ariz. at 516 ¶ 21; *Herman*, 113 Ariz. at 128. Whether the Homeowners incurred such damages and, if so, in what amount, is not before us. The State and the HOA have resolved those issues by stipulation in the superior court.

**CONCLUSION**

¶50   For these reasons, we vacate the court of appeals' opinion and affirm the superior court's judgment.